# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: TYLENOL (ACETAMINOPHEN) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § § | MDL NO. 2436<br><br>2:13-md-02436<br><br>HON. LAWRENCE F. STENGEL |

This Document Relates to:

Civil Action No. 2:12-cv-07263

| | |
|---|---|
| Rana Terry, as Personal Representative and Administrator of the Estate of Denice Hayes, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>McNEIL-PPC, Inc., McNeil Consumer Healthcare, and Johnson & Johnson, Inc.,<br><br>Defendants. | § § § § § § § § § § § § |

## O P I N I O N

**Stengel, J.**                                                    **May 20, 2015**

This case is part of a Multidistrict Litigation (MDL) involving claims of liver damage from the use of Tylenol.[1] At the heart of this MDL is the question of whether Tylenol poses a serious risk of liver damage to consumers taking it at or just above the

---

[1] There are close to two hundred other cases included in this MDL, along with twenty similar cases in New Jersey state court.

recommended dosage.[2] The plaintiff claims that her sister died of acute liver failure after taking Tylenol "as directed" by its label.[3] She asserts that Johnson & Johnson and McNeil—the makers of Tylenol—knew or should have known of this risk of acute liver failure to consumers, yet failed to warn users or to redesign the drug to minimize this risk. The court chose this case as a "bellwether" case and has scheduled it for trial.[4]

The parties have a dispute about whether Alabama law or New Jersey law applies to the claims for wrongful death and punitive damages. For the reasons explained below, I find that Alabama law applies to all of the plaintiff's claims.

## I.    BACKGROUND[5]

Plaintiff Rana Terry alleges that her sister Denice Hayes died as a result of acute liver failure caused by taking Extra Strength Tylenol as its label directed. Hayes lived in Alabama, purchased the Tylenol in Alabama, was treated for liver damage in Alabama, and died in Alabama. Defendants Johnson & Johnson and McNeil are New Jersey corporations. Johnson & Johnson is headquartered in New Brunswick, New Jersey. Johnson & Johnson considers its headquarters to be its principal place of business.

---

[2] See Master Complaint, 13-md-2436, Doc. No. 32.

[3] See Complaint, 12-cv-07263, Doc. No. 1.

[4] A "bellwether" case is a test case. "Bellwether" trials should produce representative verdicts and settlements.  The parties can use these verdicts and settlements to gauge the strength of the common MDL claims to determine if a global resolution of the MDL is possible. See FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH EDITION 360 (2004); DUKE LAW CENTER FOR JUDICIAL STUDIES, MDL STANDARDS AND BEST PRACTICES 16-21 (2014).

[5] The information contained in this section is taken from the plaintiff's complaint, unless otherwise noted. See Compl., 12-cv-07263, Doc. No. 1.

McNeil is headquartered in Fort Washington, Pennsylvania but maintains that its principal place of business, or "nerve center," is located in Skillman, New Jersey.[6]

## II.    DISCUSSION

The parties agree that Alabama law applies to all but two of the plaintiff's claims: wrongful death and punitive damages.[7] "Because choice of law analysis is issue specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).[8] Therefore, it is possible for Alabama law to apply to some of the plaintiff's claims, while New Jersey law may apply to other claims.

Alabama's wrongful death statute does not provide for compensatory damages, only punitive damages. See, e.g., Savannah & M.R. Co. v. Shearer, 58 Ala. 672, 680

---

[6] The defendants contend that McNeil is a New Jersey citizen. They rely on other decisions in this district finding that McNeil's principal place of business under Hertz Corp. v. Friend, 559 U.S. 77 (2010), is Skillman, New Jersey. See Moore v. Johnson & Johnson, 907 F. Supp.2d 646, 656-61 (E.D. Pa. 2012), reconsideration denied, 2013 WL 5298573, at *2-8 (E.D. Pa. Sept. 20, 2013); Sherfey v. Johnson & Johnson, Civ. No. 12-4162, 2014 WL 715518, at *5 (E.D. Pa. Jan. 29, 2014); Arndt v. Johnson & Johnson, Civ. No. 12-6633, 2014 WL 882777, at *6 (E.D. Pa. Mar. 6, 2014); Brown v. Johnson & Johnson, Civ. No. 12-4929 (E.D. Pa. Feb. 11, 2013)(Order, Doc. No. 36)(citing Moore as support). Those decisions considered whether removal was appropriate based on diversity, not whether New Jersey law should apply to the plaintiff's punitive damages claim. There is no question about diversity of citizenship in this case because the plaintiff is not a resident of Pennsylvania or New Jersey.

The plaintiff argues that McNeil's principal place of business is actually its Fort Washington headquarters. This issue has not been thoroughly briefed, and I need not determine McNeil's principal place of business to decide the choice-of-law question.

For the sake of this motion only, I will accept the defendants' contentions and consider McNeil to be a New Jersey corporation. As I explain below, however, this assumption does not help the defendants' arguments. A company's principal place of business is only one factor to consider in choice-of-law analysis and is not a dispositive factor under Pennsylvania choice-of-law principles.

[7] After a monthly status conference with counsel for the parties in April 2015, I asked the parties to meet and confer about which state law applies to the substantive claims in this case. They did so and agreed that Alabama law applies to all but two of the plaintiff's potential claims. I asked them to submit briefs on the disputed choice of law.

[8] See also Taylor v. Mooney Aircraft Corp., No. 06-5054, 265 Fed. Appx. 87, 91 (3d Cir. 2008)(predicting that Pennsylvania courts would utilize depecage). But see Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 (E.D. Pa. 2008).

(1877)("The damages [under the wrongful death statute] are punitive…."); <u>Industrial Chemical & Fiberglass Corp. v. Chandler</u>, 547 So.2d 812, 818 (Ala. 1988)("[T]he statute is 'punitive' in its purposes…").  Under Alabama law, damages in a wrongful death case "…are awarded to preserve human life, to punish… wrongful conduct, and to deter or discourage [the defendants] and others from doing the same or similar wrongs in the future." Alabama Pattern Jury Instructions: Civil 2d § 11.28.[9] Alabama's wrongful death statute, not the state's general punitive damages statute, governs personal injury actions resulting in death. <u>See</u> Susan Randall, <u>Only in Alabama: A Modest Tort Agenda</u>, 60 ALA. L. REV. 977, 985 (2009)("The legislature exempted wrongful death damages from its treatment of punitive damages generally…")(citing Alabama's general punitive damages

---

[9] The full Alabama Wrongful Death Act pattern jury instruction reads:

This is a claim for the wrongful death of (name of decedent).

The damages in this case are punitive and not compensatory. Punitive damages are awarded to preserve human life, to punish (name of defendant) for [his/her/its] wrongful conduct, and to deter or discourage (name of defendant) and others from doing the same or similar wrongs in the future.

The amount of damages must be directly related to (name of defendant)'s culpability, and by that I mean how bad [his/her] wrongful conduct was. You do not consider the monetary value of (name of decedent)'s life because the damages are not to compensate (name of plaintiff) or (name of decedent)'s family from a monetary standpoint because of [his/her] death.

The amount you award is within your discretion based on the evidence and the guidelines in this instruction.

<u>Roe v. Michelin North America, Inc.</u>, 613 F.3d 1058, 105 n. 9 (11th Cir. 2010).

*Compare* <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 492-93 (2008)(noting how "punitives are aimed not at compensation but principally at retribution and deterring harmful conduct" and offering similar punitive damages jury instructions from California and New York as examples). <u>See, e.g.,</u> <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003)("[P]unitive damages serve a broader function; they are aimed at deterrence and retribution.").

statute Ala. Code § 6-11-29 (2005)).[10] For this reason, the parties dispute the applicable choice of law on both the wrongful death claim and the punitive damages claim. The "issue" in dispute is which state's law applies to a punitive damages recovery. I will apply the choice-of-law analysis to the issue of punitive damages. The choice is between Alabama's wrongful death statute (which provides only punitive damages) and New Jersey's punitive damages statute coupled with its wrongful death statute.[11]

### a. Pennsylvania Choice-of-Law Principles Apply

Pennsylvania choice-of-law principles apply to this case. A federal court sitting in diversity must apply the choice-of-law rules of the state in which the court sits to determine which state's law applies. Chin v. Chrysler, LLC, 538 F.3d 272, 278 (3d Cir. 2008)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).[12] In the context of an MDL, courts routinely apply the choice-of-law rules of the court from which the case was transferred.[13] See In re Diet Drugs (Phentermine/

---

[10] Alabama's general punitive damages statute specifically states: "This article shall not pertain to or affect any civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, as amended." Ala. Code § 6-11-29 (2005).

[11] Comparing the statutes in this way is most appropriate. If Alabama law applies to the wrongful death claim, the plaintiff cannot pursue a separate punitive damages claim. If New Jersey law applies to the punitive damages claim, then New Jersey law will also apply to the plaintiff's wrongful death claim, in order to provide the plaintiff a remedy on this claim. Under the Alabama statutory framework, New Jersey law could not apply to the punitive damages claim and Alabama law also apply to the wrongful death claim. This would essentially amount to a potential double recovery of punitive damages.

[12] See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n. 8 (1981)("Under Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred.").

[13] See, e.g., In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 17 (1st Cir. 2012)("Special rules apply in MDL cases as to determining the forum state....Where a suit is consolidated and transferred under [28 U.S.C.] § 1407, courts typically apply the choice of law rules of each of the transferor courts."); Chang v. Baxter Healthcare Corp., 599 F.3d 728, 732 (7th Cir. 2010)("When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred...."); In re Air Disaster at Ramstein Air Base, Ger., 81 F.3d 570, 576 (5th Cir. 1996)("Where a transferee court presides over several diversity actions

Fenfluramine/Dexfenfluramine), No. MDL 1203, Civ.A. 03-20284, 2004 WL 1925010, at *1 (E.D. Pa. Aug. 30, 2004)("As the MDL transferee court in this matter, we must apply the choice-of-law rules of Florida, the state where the transferor court sits.") (citations omitted); In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation, 2007 WL 2541216, at *27 n. 16 (E.D. Pa. Aug. 29, 2007)("Although neither the Supreme Court nor the United States Court of Appeals for the Third Circuit has explicitly ruled on the issue, it appears that in MDL proceedings the transferee court applies the choice-of-law rules that would govern in the transferor forum.")(citations omitted). Despite the fact that the decedent was in Alabama, this case was originally filed in the Court of Common Pleas of Philadelphia, Pennsylvania, removed to the Eastern District of Pennsylvania based on diversity jurisdiction, and then transferred into this MDL. See Doc. No. 1, 27. For these reasons, Pennsylvania choice-of-law principles should be used to decide which state law applies.

**b. Pennsylvania Choice-of-Law Analysis**

Pennsylvania employs a "flexible rule" which combines the "significant contacts" analysis of Restatement (Second) of Conflict of Laws § 145 and a "governmental interest

---

consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1496 (D.C. Cir.1991)(Mikva, J., dissenting)("When a case is transferred pursuant to 28 U.S.C. § 1407(a) by the Panel on Multi–District Litigation, the transferee court must apply the choice of law of the states where the transferor courts sit."); Phelps v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi. (In re Nucorp Energy Sec. Litig.), 772 F.2d 1486, 1492 (9th Cir. 1985)("In this case, however, we must apply the choice of law rules of Illinois because the claims were originally filed in district court in Illinois before they were transferred to California by the Judicial Panel on Multidistrict Litigation."); In re New England Mut. Life. Ins. Co. Sales Prac. Litig., 236 F.Supp.2d 69, 74-75 (D. Mass. 2002)(applying to cases transferred to an MDL the "well-known" rule that "the transferee court, this [c]ourt [in this case], must apply the choice of law rule of the transferor court."). See also 19 Wright, Miller, & Cooper, Federal Practice & Procedure § 4506, at 114–15 (2d ed. 1996) ("In actions transferred under Section 1407 for consolidated pretrial discovery, ... the transferee court should apply the substantive law of the transferor state, including its choice-of-law rules.").

analysis." See Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)("[W]e are of the opinion that the strict *lex loci delicti* rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."). "The merit of such a rule is that 'it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation.'" Id. at 806 (citation and quotation marks omitted). Pennsylvania's choice-of-law analysis asks three questions: 1) is there an actual conflict or a false conflict between potentially applicable states' laws, 2) if there is an actual conflict, is there a "true conflict" based on the governmental interests underlying each law, and 3) if there is a "true conflict," which state has more significant contacts and a greater interest in its law being applied. See Specialty Surfaces Intern., Inc. v. Continental Cas. Co., 609 F.3d 223, 229-36 (3d Cir. 2010); Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-36 (3d Cir. 2007).

### 1.  An Actual Conflict Exists

It is clear that an actual conflict exists between Alabama's and New Jersey's laws. Alabama allows for uncapped punitive damages, not compensatory damages, in the case of wrongful death. See Ala.Code § 6-5-410. New Jersey, on the other hand, precludes punitive damages in wrongful death actions. N.J.S.A. § 2A:31-5. A jury may only award pecuniary damages. Id. New Jersey's general punitive damages statute caps recovery at five times the compensatory damages award or $350,000, whichever is greater. N.J.S.A.

7

§ 2A:15-5.14(b).  New Jersey's general punitive damages provision precludes recovery of punitive damages in drugs products liability cases in which a drug has been "generally recognized as safe and effective" by the Food and Drug Administration (FDA). See N.J.S.A. § 2A:58C-5. In short, the plaintiff could gain maximum punitive damages under Alabama law and minimal, if any, punitive damages under New Jersey law.[14]

### 2.  A "True Conflict" Exists

There is a "true conflict" between Alabama and New Jersey law. A "true conflict" exists when "the interests of both [states] would be adversely affected to some degree by the application of the other state's law." Specialty Surfaces Intern., Inc., 609 F.3d at 232.[15]

Alabama has made clear that its wrongful death statute is intended to protect the lives of those within its borders by imposing damages without limits on tortfeasors causing death.[16] By making a wrongful death "expensive," Alabama seeks to deter

---

[14] I recognize that Alabama's wrongful death scheme may raise constitutional concerns. I address this point briefly below in another note.

[15] "A false conflict occurs where only one state's interests would be impaired, and the law of the interested state applies." Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 615 (E.D. Pa. 2008)(citing LeJeune v. Bliss–Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996)).

[16] See, e.g., Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission."(citations omitted)); Savannah & M.R. Co. v. Shearer, 58 Ala. 672, 680 (1877)("The damages [under the wrongful death statute] are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.'"); Geohagan v. General Motors Corp., 279 So.2d 436, 439 (Ala. 1973)("Our decisions since the enactment of our wrongful death acts have made it clear that such acts are intended to protect human life, to prevent homicide, and to impose civil punishment on takers of human life. The damages awarded are punitive in nature. The personal representative in prosecuting a wrongful death action acts as an agent of legislative appointment for declaring the public policy evidenced by the wrongful death acts."); Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 818 (Ala. 1988)("'[T]he statute is 'punitive' in its purposes, but that '[p]reservation of life-prevention of its destruction by the wrongful acts or omission of another, is the subject of the statute; and all its provisions are but machinery for carrying it into effect.'"); Lemond Const. Co. v. Wheeler, 669 So.2d 855, 864-67 (Ala. 1995)(Maddox, J., concurring); Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999); Boudreaux v. Pettaway, 108 So.3d 486, 496-98 (Ala.

similar tortious conduct. See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116

(1927)(explaining that the Alabama statute was an "attempt to preserve human life by

making homicide expensive."); Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889

(Ala. 1999)(explaining that the goal of the statute is "preservation of life because of the

enormity of the wrong, the uniqueness of the injury, and the finality of death.")(citation

omitted)).

New Jersey, on the other hand, considers limiting damages to be more important,

especially for pharmaceutical companies operating within its borders. Under the New

Jersey punitive damages statute, punitive damages are not available in drug products

liability actions when a drug has been approved by the Food and Drug Administration

(FDA). N.J.S.A. § 2A:58C-5.[17] In 1987, the New Jersey Legislature enacted this

---

2012)(reaffirming the purpose of the wrongful death statute as protecting the lives of Alabama citizens), *overruled on other grounds by*, Gillis v. Frazier, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014).

[17] The New Jersey Punitive Damages statutes states:

> c. Punitive damages shall not be awarded if a drug or device or food or food additive which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 et seq. and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations. However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be awarded. For purposes of this subsection, the terms "drug," "device," "food," and "food additive" have the meanings defined in the "Federal Food, Drug, and Cosmetic Act."

N.J.S.A. 2A:58C-5(c).

Though the statute provides an exception for manufacturers who "knowingly withheld and misrepresented information required to be submitted," New Jersey courts have interpreted this provision to have been preempted by Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341 (2001). See McDarby v. Merck & Co., Inc., 401 N.J.Super. 10, 949 A.2d 223 (App. Div. 2008). Whether it is, in fact, preempted by Buckman is somewhat of an open question. See Sullivan v. Novartis Pharmaceuticals Corp., 602 F.Supp.2d 527, 534 n. 8 (D.N.J. 2009)("The vitality of McDarby was subsequently cast into some doubt by the Supreme Court's decision in Wyeth v. Levine, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)."); Forman v. Novartis Pharmaceuticals Corp., 793 F.Supp.2d

provision in order to "re-balance the law 'in favor of manufacturers.'" <u>Rowe v. Hoffman-LaRoche, Inc.</u>, 917 A.2d 767, 772 (N.J. 2007)(quoting William A. Dreier, et al., <u>N.J. Prods. Liab. & Toxic Torts Law</u> at 15:4 (2007)).[18] The legislature saw this enactment as a response to an "urgent need" to establish clearer rules on recoverable damages in products liability cases. <u>Id.</u>

New Jersey's wrongful death statute is not intended to be punitive and, instead, is intended to provide family members with "contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors." <u>Smith v. Whitaker</u>, 734 A.2d 243, 248 (N.J. 1999)(quoting <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1398 (3d Cir. 1997). The wrongful death statute serves to "bring parity both to claims by a victim who lives and to claims by his survivors if he dies." <u>Aronberg v. Tolbert</u>, 25 A.3d 1121, 1130 (N.J. 2011). In other words, it does not give the decedent any more chance of recovering damages simply because he died than if he had been injured and lived.[19] This purpose directly conflicts with the purpose of Alabama's law. For these reasons, there is a "true conflict" between Alabama and New

---

598, 601-610 (E.D. N.Y. 2011)(discussing viability of <u>McDarby</u> after <u>Wyeth</u> and finding that punitive damages exception not preempted); <u>Hill v. Novartis Pharm. Corp.</u>, No. 1–06:–CV–00939–AWI–DLB, 2012 WL 967577, at *2 n. 2 (E.D.Cal. Mar. 21, 2012).  <u>See also</u> <u>Stromenger v. Novartis Pharmaceuticals Corp.</u>, 941 F.Supp.2d 1288, 1299-1301 (D.Or. 2013)(discussing the vitality of <u>McDarby</u> after <u>Wyeth</u>). Under New Jersey precedent, this exception is narrow if it exists at all. <u>See</u> <u>Knipe v. SmithKline Beecham</u>, 583 F.Supp.2d 602, 637-40 (E.D. Pa. 2008)(finding some reasons for punitive damages preempted but others not under <u>McDarby</u> and <u>Buckman</u>).

[18] <u>See also</u> <u>Sinclair v. Merck & Co., Inc.</u>, 948 A.2d 587, 593 (N.J. 2008)(explaining how the purpose of the law was to "balance[ ] the interests of the public and the individual with a view towards economic reality.'" (quoting <u>Zaza v. Marquess & Nell</u>, Inc., 675 A.2d 620 (N.J. 1996)(second alteration in original)(citations and quotation marks omitted)).

[19] <u>See</u> <u>Aronberg v. Tolbert</u>, 25 A.3d 1121, 1130 (N.J. 2011)("The statutory language does not suggest that a claim that a victim cannot bring in life can only spring forth in the event of his death. Indeed, N.J.S.A. 2A:31–1 gives the right of an heir 'to maintain an action for damages' only if a claim could have been brought by the decedent had he lived.").

Jersey's laws: an application of one state's statute would adversely affect the interest embodied in the other state's statute.

### 3.  Alabama Has the "Most Significant Relationship" and a Greater Interest

The final inquiry asks which state has more "significant" contacts to the issue as set forth in the Restatement (Second) of Conflicts of Laws. <u>Specialty Surfaces Intern., Inc.</u>, 609 F.3d at 230. The contacts are then weighed on a "qualitative scale according to their relation to the policies and interests underlying the [issue at hand]." <u>Id.</u> (quoting <u>Shields v. Consol. Rail Corp.</u>, 810 F.2d 397, 400 (3d Cir. 1987))(quotation mark omitted).  When applying Pennsylvania choice-of-law principles to an action for personal injuries, "the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties." <u>Laconis v. Burlington County Bridge Com'n</u>, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990). Contacts considered to be "significant" are: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered." <u>Id</u>.

Alabama has several significant contacts related to this action. It is the place of the decedent's injury and death. The decedent allegedly purchased Tylenol in Alabama, ingested Tylenol in Alabama, was treated by her doctors for her injuries in Alabama, and eventually died from those injuries in Alabama. Some of the conduct considered to have

caused the injury occurred in Alabama. The decedent received warnings about the product in Alabama and viewed advertising about Tylenol in Alabama.

On the other hand, New Jersey has contacts relevant to the issue of punitive damages—a claim which considers the egregiousness of the *defendants*' behavior. The defendants are incorporated in New Jersey. Both maintain their principal place of business is in New Jersey.[20] Many of the corporate decisions about how to market Tylenol, how to test its efficacy, and how to comply with necessary regulations appear to have been made in New Jersey. Some conduct related to the defendants' conduct on the issue of punitive damages also appears to have taken place in Pennsylvania.[21]

More importantly, the place in which the parties' relationship is centered is clearly Alabama. The defendants sold the Tylenol in Alabama, marketed the Tylenol in Alabama, and were expected to comply with the laws of Alabama. It appears the

---

[20] I will consider McNeil's principal place of business to be in New Jersey for the purposes of this motion. However, this is not a formal ruling on the issue. It may be revisited at a later time, as explained above.

[21] The defendants assume that a company's principal place of business is necessarily the location of relevant conduct related to a punitive damages claim. This may not necessarily be true. See Brown v. Johnson & Johnson, Civ. No. 12-4929 (E.D. Pa. Feb. 11, 2013)(Order, Doc. No. 36); Brown v. Johnson & Johnson, --- F.Supp.3d ---- (2014), No. 12–4929, 2014 WL 6979262, at *5 (E.D. Pa. Dec. 9, 2014)(finding that McNeil's principal place of business is New Jersey but recognizing that the conduct relevant to the punitive damages analysis took place in Pennsylvania). While neither party is advocating for the application of Pennsylvania law to the punitive damages claim, the plaintiff points out that important corporate conduct related to punitive damages also took place in Pennsylvania. It does appear that conduct relevant to the punitive damages claim likely took place in Pennsylvania as well. See Maya v. McNeill-PPC, Inc., et al, February Term, 2009, No. 002879 (Pa. Com. Pl., Quiñones, J (now E.D. Pa.))(12-cv-7263, Doc. No. 33, Ex. C at 36-38)(explaining that many decisions involving McNeil Products regarding labeling, regulatory affairs, etc. were made in Pennsylvania); Brown v. Johnson & Johnson, et al., --- F.Supp.3d ---- (2014), No. 12–4929, 2014 WL 6979262, at *5 (E.D. Pa. Dec. 9, 2014)(finding that McNeil conducted "significant business" related to the manufacture and regulation of its products in Pennsylvania). Johnson & Johnson executives and McNeil executives located in both states appear to have worked closely on important issues related to Tylenol's efficacy and marketing. However, final decisions about the regulation and sales of Tylenol seem to have been made at Johnson & Johnson's headquarters in New Jersey. There is no doubt that Johnson & Johnson's principal place of business and state of incorporation is New Jersey. For these reasons, I consider any contacts in New Jersey to have more significance than those that may have occurred in Pennsylvania but do not consider all relevant corporate (mis)conduct to have taken place in New Jersey.

decedent had no contact with New Jersey. She didn't travel there, ingest Tylenol there, nor was she injured there. The two parties interacted through their consumer relationship in Alabama. See Henderson v. Merck & Co., Inc., No. 04-CV-05987-LDD, 2005 WL 2600220, at *8 (E.D. Pa. Oct. 11, 2005)("Indeed, because plaintiff is a Michigan resident, because plaintiff purchased, was prescribed, and ingested Bextra within Michigan's borders, and because plaintiff allegedly suffered injuries in Michigan, the interests of Pennsylvania, New York, and New Jersey in applying  their product liability laws to such extraterritorial conduct lose vigor."); Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 195 (E.D. Pa. 2007)("The only factor favoring this forum is that GSK is headquartered here…The law governing liability and damages will be controlled by the individual [class] member's home state's jurisprudence" where each class member was likely injured, domiciled, and the parties' relationship was centered.); Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 (E.D. Pa. 2008)(finding New Jersey's contacts, as the place of injury and plaintiff's domicile, outweighed defendant's contacts with its home state on the issue of punitive damages).[22] Alabama has more relevant contacts than does New Jersey.

There are policy considerations as well. The policy behind Alabama's wrongful death statute—to protect those within its borders from tortious conduct causing death—is longstanding.[23] Alabama's wrongful death statute and its unique punitive scheme date

---

[22] See also Laconis v. Burlington County Bridge Com'n, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990)(finding that the place of incorporation, as the only contact to New Jersey, was not enough to outweigh other contacts).

[23] See, e.g., Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission."(citations

back to the late 1800s. <u>See</u> <u>Louis Pizitz Dry Goods Co., Inc. v. Yeldell</u>, 274 U.S. 112,

114 (1927)("The legislation now challenged has been on the statute books of Alabama in

essentially its present form since 1872."); <u>Savannah & M.R. Co. v. Shearer</u>, 58 Ala. 672,

680 (1877). Despite challenges to its unique scheme in the legislature and state Supreme

Court, the wrongful death statute continues to serve as a means to protect human life and

punish tortfeasors. <u>See</u> <u>Boudreaux v. Pettaway</u>, 108 So.3d 486, 496-98 (Ala. 2012)

(reaffirming the purpose of the wrongful death statute as protecting the lives of Alabama

citizens),[24] *overruled on other grounds by*, <u>Gillis v. Frazier</u>, --- So.3d ----, 2014 WL

3796382, at *6 (Ala. Aug. 1, 2014).[25] Alabama also has an interest in regulating the

activities of those corporate entities that choose to do business within its borders. <u>See</u>

<u>Shields v. Consol. Rail Corp.</u>, 810 F.2d 397, 401 (3d Cir. 1987)("Having elected to

transact business in Indiana and having exposed itself to a policy that fails to give rein to

---

[24] <u>See also</u> <u>Lemond Const. Co. v. Wheeler</u>, 669 So.2d 855, 864 (Ala. 1995)(Maddox, J., concurring)("In the past, this Court has been requested on more than one occasion to fashion a different rule of law in cases such as this. This Court has been unwilling to change the law. The Legislature likewise has not elected to change the law."); <u>Tillis Trucking Co., Inc. v. Moses</u>, 748 So.2d 874, 889 (Ala. 1999)(citing several cases rejecting challenges to wrongful death policy considerations); <u>McKowan v. Bentley</u>, 773 So. 2d 990, 1000 (Ala. 1999)(Houston, J., concurring) (explaining that tort reform efforts in 1987 and 1999 put legislative imprimatur on the Court's interpretation of § 6-5-410); Susan Randall, <u>Only in Alabama: A Modest Tort Agenda</u>, 60 ALA. L. REV. 977, 981-85 (2009)(discussing the history of the Alabama wrongful death statute and its treatment by the judiciary and legislature).

[25] <u>See</u> <u>Gillis v. Frazier</u>, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014)("We accept Dr. Gillis's invitation to overrule <u>Boudreaux</u> to the extent that it held that, in calculating a defendant's assets, the trial court may consider the contents of the claim file compiled by a defendant's liability-insurance carrier and include among the defendant's assets a potential bad-faith and/or negligent-failure-to-settle claim against the defendant's liability-insurance carrier.")

contribution, Conrail's rights must be governed by that determination. We cannot agree with the district court's conclusion that Pennsylvania law travels with Conrail wherever it runs.").[26]

Enacted in the era of tort reform, New Jersey's statute serves to regulate the damages levied against its corporate citizens—specifically pharmaceutical companies within its borders—in order to provide economic certainty and stability.[27] Where one state's interest is to protect the economic interests of its corporations and another state's interest is to protect its citizens from tortious conduct within its borders, courts in this district are inclined to find the latter interest to be greater, especially when the plaintiff's home state is also the place of injury. See, e.g., Wolfe v. McNeil-PPC, Inc., 703 F.Supp.2d 487, 494 (E.D. Pa. 2010)("Maine has a greater interest in having its law applied [to the punitive damages claim]. Maine, as the place where the drugs were prescribed and taken by one of its citizens, has a strong interest in applying its law to conduct that allegedly caused an injury in its borders."); Bearden v. Wyeth, 482 F.Supp.2d 614, 622 (E.D. Pa. 2006)("[W]e find that Arkansas has a greater interest in applying its laws to protect and provide redress for a citizen who was prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and

---

[26] See also Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 348 (E.D. Pa. 2000)("Although Pennsylvania has an interest in punishing those who harm their citizens, we are persuaded that Puerto Rico's interest in regulating the activity that occurs in its territorial waters—whether commercial or recreational—is more dominant. Indeed, the tragic death that befell Natalie easily could have been visited upon a Puerto Rican citizen.")(applying Pennsylvania law for compensatory damages because plaintiffs were citizens of that state but applying Puerto Rican law on punitive damages because the injury occurred in Puerto Rico); Kallman v. Aronchick, 981 F.Supp.2d 372, 379 (E.D. Pa. 2013)(finding that New Jersey law applied because plaintiff resided there and ingested drugs there and New Jersey's state interest in regulating the sale of drugs within its borders outweighed defendants' corporate connections to other states)(citing Knipe, Blain, Bearden, and Henderson).

[27] See Rowe v. Hoffman-LaRoche, Inc., 917 A.2d 767, 772-73 (N.J. 2007).

was injured by it—all within his home state of Arkansas…").[28] This is true even when the

corporation is headquartered in *Pennsylvania*.[29] I am persuaded by the reasoning in these

cases. As the place of injury, domicile of the decedent, and location of the parties'

relationship, Alabama has a greater interest in having its law applied in light of its

longstanding policy to protect its citizens from fatal tortious conduct.

Applying New Jersey law to the punitive damages claim would also substantially

frustrate Alabama's state interest in protecting its citizens and regulating corporate

---

[28] See also Laconis v. Burlington County Bridge Com'n, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990)("Applying these principles to the present case, Pennsylvania clearly has the most significant relationship to these parties and this tortious occurrence. The place of the injury and tortious conduct occurred here. The plaintiff is domiciled in Pennsylvania, which has a strong interest in protecting its citizens against tortious conduct, and the Commission conducts at least one-half of its operations in Pennsylvania. The only contact New Jersey has with this action is that the Commission was incorporated under its laws and conducts business there also."); Rowland v. Novartis Pharmaceuticals Corp., 983 F.Supp.2d 615, 629 (W.D. Pa. 2013)("NPC cites to other Zometa litigation cases where district courts concluded that the conduct relevant to plaintiffs' punitive damages claims—the corporate decisions with respect to labeling, packaging, warning, etc.—occurred at NPC's New Jersey headquarters, for the proposition that New Jersey punitive damages law alone may be applied in these, and similar, cases. However, the Court is not persuaded by the reasoning in those cases. Instead, the Court finds the analysis of …district courts in our circuit in several similar cases, to be more convincing, given their recognition of the legitimate and strong interests of the state where the plaintiff's injuries occur, the drug was prescribed, and where the defendant has affirmatively and actively marketed and sold the drug at issue into the state.")(applying New York and District of Columbia choice-of-law principles).

[29] See Wolfe v. McNeil-PPC, Inc., 703 F.Supp.2d 487, 494 (E.D. Pa. 2010)("Maine has a greater interest in having its law applied [to the punitive damages claim]. Maine, as the place where the drugs were prescribed and taken by one of its citizens, has a strong interest in applying its law to conduct that allegedly caused an injury in its borders."); Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 193-94 (E.D. Pa. 2007)("There is no way to apply Pennsylvania law to part of the liability determination, as proposed by the plaintiffs, without disregarding the comity afforded the other states whose interests are in protecting their citizens from tortious harm caused within their boundaries. A state's interest in fixing liability for tortious harm caused within its boundaries goes to its interests in protecting its citizens and regulating conduct there. Of course, Pennsylvania has an interest in regulating its citizens' labeling practices. When that conduct reaches and has consequences beyond the state's borders, it affects citizens of other states. When it does, the foreign state's interest in protecting its citizens outweighs Pennsylvania's regulatory concerns."); Bearden v. Wyeth, 482 F.Supp.2d 614, 621-22 (E.D. Pa. 2006)(finding that Arkansas over Pennsylvania law applied because the "parties relationship was centered in decedent's home state," *inter alia*, though "Pennsylvania has an interest in regulating the activities of one of the defendants, Wyeth Pharmaceuticals, a company that maintains a principal place of business within the Commonwealth and that conducted many of the activities concerning Effexor XP there…"); Henderson v. Merck & Co., Inc., No. 04-CV-05987-LDD, 2005 WL 2600220, at *7-8 (E.D. Pa. Oct. 11, 2005)(choosing Michigan—plaintiff's home state were drug purchased and injury occurred—over Pennsylvania, New York, and New Jersey laws—the home states of defendant corporations).

entities doing business within its borders.[30] Applying New Jersey law to the issue of

punitive damages could require this court to apply New Jersey law on other substantive

claims.[31] See Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 (E.D. Pa.

2008)("[T]he Court is mindful that New Jersey has sought to comprehensively regulate

products liability actions in its state through the PLA and that the PLA applies to all of

the substantive claims in this action.").  Under these circumstances, Alabama's interest in

---

[30] "Because the policy of this state is to regard human life as being beyond measure in terms of dollars, the jury must disregard the decedent's wealth or lack of wealth, it must disregard the decedent's potential for accumulating great wealth or lack of potential to accumulate wealth; and it must disregard his or her talents and education, or lack of them, as well as his or her station in life. The jury's consideration of the 'enormity of the wrong' includes assessing the finality of death, the propriety of punishing the wrongdoer or wrongdoers, whether the death could have been prevented, and, if so, the lack of difficulty that would have been involved in preventing the death, as well as the public's interest in deterring others from committing the same or similar wrongful conduct." Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999)(quoting Campbell v. Williams, 638 So.2d 804, 810-11 (Ala.1994)) (quotation marks and citation omitted).

In this case particularly, the application of New Jersey law would especially frustrate Alabama's scheme to punish harms done to its citizens, regardless of their wealth or earning potential. Ms. Hayes was receiving disability when she died. She had been working two years before her death but left her job due to chronic back pain. She treated pain related to this medical condition with Tylenol. See Deposition of Rana Terry, Doc. No. 35, Ex. A. Under these circumstances, the compensatory damages her sister may recover would likely be much less than what they would have been when she had been working. For those like Ms. Hayes who are treating chronic pain with FDA-approved medications, those most vulnerable to the effects of a defective drug or label, a recovery under New Jersey's wrongful death and punitive damages statutes would be minimal. The availability of such a low damage award in the event of a wrongful death would substantially frustrate Alabama's goal of deterring similar tortious conduct by drug manufacturers. While this policy may be appropriate in New Jersey, where its residents might benefit from pharmaceutical companies located there, it does little to further Alabama's policy goals and, instead, serves to substantially frustrate them.

[31] See also McDarby v. Merck & Co., Inc., 401 N.J.Super. 10, 949 A.2d 223 (App. Div. 2008)(explaining how punitive damages statute also precludes a fraud claim based on Buckman preemption). See also Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 (E.D. Pa. 2008)(explaining how depecage may not be appropriate when applying punitive damages of one state and the substantive law of another state because applying the two states' laws could cause "undue confusion" and "lead to a result 'that neither state would allow… [since when] a court combines elements of the laws of different states it may upset the delicate balance achieved by legislative compromise.'")(quoting Petrokehagias v. Sky Climber, Civ. A. Nos. 96–6965, 97–3889, 1998 WL 227236, at *8 (E.D. Pa. May 4, 1998))(citation and quotation marks omitted).

having its law applied to all of its claims outweighs New Jersey's interest in having its law applied to the punitive damages claim.[32]

The defendants want New Jersey law to control on the issue of punitive damages, citing a 1996 Eastern District of Pennsylvania case, Kelly v. Ford Motor Co. Kelly predicted the Pennsylvania Supreme Court would consider defendant's contacts to be the relevant contacts in a choice-of-law analysis for a punitive damages claim.[33] 933 F.Supp. 465, 469 (E.D. Pa. 1996). Kelly adopted the reasoning in Serbin Dev. Corp. v. North River Ins. Co., Civ.A. No. 85–4273, 1986 WL 4315 (E.D. Pa. Apr. 8, 1986), a similar "prediction" from ten years earlier. Id.[34] Kelly found the comments following Restatement (Second) Conflict of Law § 145 to be instructive: "If the primary purpose of the tort rule involved is to deter or punish misconduct ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." Id. (quoting § 145 cmt. c, at 416).[35] Kelly predicted that the Pennsylvania Supreme Court

---

[32] See Restatement (Second) Conflict of Law § 145, cmt. d ("[A] state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. Thus, subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection.")(explaining how different laws may apply to different issues but that this is more important when the injury occurs in a state where neither party is domiciled).

[33] The defendants also cite to a recent decision in Risperdal v. Janssen Pharmaceuticals, Inc., et al., No. 2010296, 2014 WL 2453045 at *1 (Pa. Com. Pl. May 2, 2014), which held that New Jersey law applied to the issue of punitive damages. That decision, however, was made in a single page Order with no choice-of-law analysis. The reasons which the court considered in making its decision are not identified nor are any other facts in the case. I find this ruling to be unpersuasive.

[34] Kelly is the only case that cites Serbin.

[35] Comment c states:

> Purpose of tort rule. The purpose sought to be achieved by the relevant tort rules of the interested states, and the relation of these states to the occurrence and the parties, are important factors to be considered in determining the state of most significant relationship. This is because the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the

would rule similarly if faced with this issue.[36] The defendants also cite <u>Campbell v. Fawber</u>, 975 F.Supp.2d 485 (M.D. Pa. 2013).[37] <u>Campbell</u> found <u>Kelly</u> to be persuasive and adopted its reasoning. <u>Id.</u> at 507-08.[38]

---

purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties. **If the primary purpose of the tort rule involved is to deter or punish misconduct, as may be true of rules permitting the recovery of damages for alienation of affections and criminal conversation, the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship (see § 154, Comment c).** On the other hand, when the tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interest in the matter. This factor must not be over-emphasized, however. To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, and in the case of a given rule it will frequently be difficult to tell which of these objectives is the more important.

Restatement (Second) Conflict of Laws § 145 cmt. c (emphasis added).

[36] The Pennsylvania Supreme Court has not specifically ruled on this issue. The only Pennsylvania state court case citing to <u>Kelly</u> is a Superior Court case, <u>Daniel v. Wyeth Pharmaceuticals, Inc.</u>, 15 A.3d 909, 935 (Pa. Super. Ct. 2011). In <u>Daniel</u>, the Pennsylvania Superior Court did explain that the conduct of the defendant relevant to punitive damages occurred in Pennsylvania, the place of corporate decisions about appropriate warnings for a drug, not Arkansas, the place of injury. 15 A.3d 909, 935 (Pa. Super. Ct. 2011). The court went on to explain in a footnote that Pennsylvania choice-of-law rules required the application of Pennsylvania law on punitive damages because "the conduct forming the basis for the assessment of punitive damages occurred in Pennsylvania." <u>Id.</u> at 935 n. 17. The court cited <u>Kelly</u> as "persuasive" in this regard. The court then noted, however, that the parties agreed that Pennsylvania law applied to punitive damages. There was no dispute about the choice of law nor was there any formal analysis of the choice of law conducted. The issue on appeal was whether the trial court erred in granting a motion for Judge Not-withstanding the Verdict on punitive damages. The Superior Court reversed that decision. <u>Id.</u> at 936. The Supreme Court has since granted an allowance of appeal on this issue. <u>See</u> <u>Daniel v. Wyeth Pharmaceuticals, Inc.</u>, 32 A.3d 1260 (Pa. Dec. 5, 2011). That appeal was later dismissed as improvidently granted. <u>Daniel v. Wyeth Pharmaceuticals, Inc.</u>, 82 A.3d 942 (Pa. Dec. 16, 2013). For these reasons, I consider this footnote from <u>Daniel</u> to be unpersuasive dicta.

[37] The defendants cite several other cases outside this Circuit to support their argument: <u>Deutsch v. Novartis Pharmaceuticals Corp.</u>, 723 F.Supp.2d 521 (E.D. N.Y. 2010); <u>Zimmerman v. Novartis Pharmaceuticals Corp.</u>, 889 F.Supp.2d 757 (D. Md. 2012); <u>Stromenger v. Novartis Pharmaceuticals Corp.</u>, 941 F.Supp.2d 1288 (D.Or. 2013); and <u>Aguirre Cruz v. Ford Motor Co.</u>, 435 F.Supp.2d 701 (W.D. Tenn. 2006). I do not find these cases to be persuasive. <u>See</u> <u>Rowland v. Novartis Pharmaceuticals Corp.</u>, 983 F.Supp.2d 615, 624-31 (W.D. Pa. 2013)(rejecting reasoning of <u>Deutsch</u>, <u>Stromenger</u>, and <u>Zimmerman</u>). None apply Pennsylvania choice-of-law principles, and they weigh considerations differently than this court is expected to do.

In <u>Deutsch v. Novartis Pharmaceuticals Corp.</u>, the New York district court applied New York choice-of-law principles. <u>Id.</u> at 524. In deciding between New York law and New Jersey law, the court only considered the "interests" of each state, not the "substantial contacts" as well. <u>Id.</u> <u>Deutsch</u> also relies heavily on precedent from New York courts in making its decision. <u>See id.</u> at 524-25. <u>Deutsch</u>'s interpretation of this precedent may not be entirely consistently with other New York precedent on this same topic. <u>See</u> <u>Rowland v. Novartis Pharmaceuticals Corp.</u>, 983 F.Supp.2d 615, 629-30 (W.D. Pa. 2013)("This Court is not persuaded that the reasoning set forth in <u>Deutsch</u> controls here. It is certainly well-settled in New York that the law of the place of the tort applies to a claim for punitive damages. However, it is equally well-established that where the defendant's misconduct and the

plaintiff's injury occur in different states, 'the place of the tort is the jurisdiction where the last event necessary to make the defendant liable occurred.' In re September 11th Litig., 494 F.Supp.2d 232, 239 (S.D.N.Y. 2007)(quoting Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)." (quotation marks omitted)).

In Zimmerman v. Novartis Pharmaceuticals Corp., a Maryland district court applied Tennessee choice-of-law principles to the question of whether New Jersey or Maryland law applied to punitive damages in a drug products liability MDL case. 889 F.Supp.2d 757, 759-61 (D. Md. 2012). That court found that New Jersey law applied to the punitive damages claim. Id. at 764. In reaching this conclusion, Zimmerman relied on Deutsch and only conducted a significant contacts analysis. Id. at 762-64. The court did not also consider the effect of applying one state's law on the policy behind that other state's law—an additional consideration in Pennsylvania choice-of-law principles. For these reasons, this case is not persuasive. See also Rowland, 983 F.Supp.2d at 625 n. 10.

In Stromenger v. Novartis Pharmaceuticals Corp., an Oregon district court applying New Jersey choice-of-law principles found the reasoning in Deutsch and Zimmerman to be persuasive, in part, because all three cases involved liability regarding the same drugs. 941 F.Supp.2d 1288, 1296-98 (D.Or. 2013). See Deutsch, 723 F.Supp.2d at 522; Zimmerman, 889 F.Supp. at 759. Given the considerations I must weigh under Pennsylvania choice-of-law principles, I am not persuaded by its analysis. See Rowland, 983 F.Supp.2d at 629, 629 n. 14 ("[T]he Court is not persuaded by the reasoning in those cases. Instead, the Court finds the analysis of … district courts in our circuit in several similar cases, to be more convincing, given their recognition of the legitimate and strong interests of the state where the plaintiff's injuries occur, the drug was prescribed, and where the defendant has affirmatively and actively marketed and sold the drug at issue into the state.").

In Aguirre Cruz v. Ford Motor Co., a Tennessee district court applied Tennessee choice-of-law principles to determine that Michigan law, the home state of the defendants, applied to punitive damages. 435 F.Supp.2d 701, 703, 707 (W.D. Tenn. 2006). The court conducted only a "significant contacts" analysis in making its decision. See id. at 704-08. In that case, the plaintiffs had driven from their home state of Tennessee to Mexico. Id. at 702. While in Mexico, their Ford Explorer was involved in an accident causing death to one plaintiff/decedent. Id. The parties disagreed about whether the law of the plaintiffs' home state or that of the defendant's would apply to punitive damages. Id. Unlike this case, the place of injury was not also the plaintiffs' domiciliary. In such a situation, it is understandable why a court may choose the defendant's home state over that of the plaintiff's home state using a "significant contacts analysis." As Aguirre Cruz points out, the place where the relationship of the parties is centered is less clear. See id. at 707. See also In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d 594, 612 (7th Cir. 1981)(finding that the place of the parties' relationship is unclear when plaintiffs were traveling from one place and injured in another); Danziger v. Ford Motor Co., 402 F.Supp.2d 236, 239-41 (D.D.C. 2005) (explaining how the relationship between the parties was essentially spread over several states because the plaintiffs lived in D.C., the car was purchased in Maryland, and the accident occurred in Nebraska).

Aguirre Cruz also involved a situation in which the plaintiffs were not the original owners of their car. The court explained that this factor too attenuated the relationship between the parties, making the place of the relationship between them less relevant to its analysis. Id. at 707. Given that the facts in Aguirre Cruz have significant factual differences which could alter the outcome of the court's choice-of-law analysis, I do not find this case to be persuasive.

[38] Campbell v. Fawber, 975 F.Supp.2d 485, 507-08 (M.D. Pa. 2013)("In Kelly, the Eastern District of Pennsylvania reasoned that when the subject of a conflict of laws is punitive damages, the residence of the plaintiff and the location of the injury are not relevant contacts, because the purpose of punitive damages is not to compensate for injury but to punish and deter outrageous conduct. Kelly, 933 F.Supp. 465, 469 (E.D. Pa.1996). Accordingly, the most relevant contacts are the location where the allegedly outrageous conduct took place, and the state of incorporation and principal place of business of the corporation involved.… With respect to the 'interest' prong of Pennsylvania's choice of law analysis, Kelly is once again instructive.").

I have found only two Pennsylvania district court cases which have found Kelly's choice-of-law analysis on punitive damages to be persuasive. Campbell is one. The other is Brown v. Johnson & Johnson, et al., --- F.Supp.3d ---- (2014), No. 12–4929, 2014 WL 6979262, at *5 (E.D. Pa. Dec. 9, 2014). Brown did find that applying Pennsylvania

Kelly appears more often distinguished than followed. See, e.g., Bearden v. Wyeth, 482 F.Supp.2d 614, 621 n. 6 (E.D. Pa. 2006)("We note plaintiff's reliance on Kelly v. Ford Motor Co., 933 F.Supp. 465 (E.D. Pa. 1996), for the proposition that we must apply Pennsylvania law, but we find that case distinguishable."); Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 n. 36 (E.D. Pa. 2008)("Plaintiffs cite to Kelly v. Ford Motor Co., 933 F.Supp. 465 (E.D. Pa. 1996) in support of its argument that depecage should apply to allow a conflict of laws analysis with respect to a punitive damages claim. This case, however, is distinguishable…").[39]

---

law to the punitive damages claim for a tort based in Florida was appropriate. Id. However, Brown's choice-of-law analysis on the punitive damages claim found a false conflict between Pennsylvania and Florida law. Id. at *4-5. Brown applied Pennsylvania law to punitive damages, after considering its "true conflict" with New Jersey law, because relevant conduct related to business decisions occurred in Pennsylvania not Florida, the place of injury. Id. at *5. The parties are not asking me to apply Pennsylvania law. Brown is distinguishable from this case.

[39] See also Duchesneau v. Cornell University, No. 08–4856, 2012 WL 3104428, at *4 n. 7 (E.D. Pa. Jul. 31, 2012)("These circumstances are readily distinguishable from those in Kelly v. Ford Motor Co., 933 F.Supp. 465 (E.D. Pa.1996), upon which T–Trak heavily relies…. Kelly is not persuasive.") and at *4 ("Generally speaking, courts applying the Pennsylvania choice of law contacts analysis to product liability matters have applied the law of the state where the product was used and where the accident occurred."); Kukoly v. World Factory, Inc., No. 07-01644, 2007 WL 1816476, at *3 n. 1 (E.D. Pa. Jun. 22, 2007) ("Defendants' reliance on Kelly v. Ford Motor Co., 933 F.Supp. 465 (E.D. Pa.1996), is misplaced. Here, unlike in Kelly, the facts regarding the 'place of conduct' contact are in dispute. Texas may have very little, if any, contacts with this alleged incident other than being the state where World Factory has its principal place of business.") and at *3 ("Therefore, the most relevant contacts here are the domicile of the parties, the place of injury, and the place where the relationship is centered, which are all in Pennsylvania…[a]pplying Pennsylvania law to Count IV [punitive damages]…"); Rowland v. Novartis Pharmaceuticals Corp., 983 F.Supp.2d 615, 626 (W.D. Pa. 2013)("NPC emphasizes that the location of the Defendant's principal place of business is a factor courts have considered to be of greatest (if not conclusive) importance in the context of punitive damages choice of law issues. Keene, 597 F.Supp. at 939, Minebea, 377 F.Supp.2d at 40–41, Kelly v. Ford Motor Co., 933 F.Supp. 465, 469 (E.D. Pa. 1996). The Court agrees that the principal place of business of the Defendant is a relevant factor. However, as previously noted, where the injury, and the conduct causing it, occur in the same state (here, Pennsylvania), the law of that state is almost uniformly applied. Warriner, 475 F.3d at 503. Courts typically follow this rule because 'a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there,' Id." (citing Keene Corp. v. Insurance Co. of North America, 597 F.Supp. 934 (D.D.C. 1984)); Minebea Co., Ltd. v. Papst, 377 F.Supp.2d 34 (E.D. Pa. 2005)).

Several other courts outside this Circuit, including New Jersey courts, have also rejected the defendants' argument that the location of defendants' corporate conduct is the most relevant factor in punitive damage choice-of-law analysis. See, e.g., Hill v. Novartis Pharmaceutical Corp., No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577, at *5-11  (E.D. Cal. Mar. 21, 2012)(finding that California, not New Jersey, law applied to plaintiff's punitive damages in drug products liability action because California had more significant contacts and had a greater interest in protecting its citizens); In re Boston Scientific Corp. Pelvic Repair System Products, MDL No. 2326, No. 2:13–cv–

Kelly is distinguishable from this case. Unlike in Kelly, the corporate conduct which may have caused the plaintiff's injury occurred in two different states, Pennsylvania and New Jersey. This dilutes the significance of New Jersey as the alleged principal place of business of the defendants. Alabama's interest in having its law applied also is more significant than the state law interests discussed in Kelly.[40] Like many other courts in this Circuit, I will decline to follow Kelly.

This same choice-of-law issue was very recently addressed in a New Jersey court in a very similar case. In Lyles v. McNeil-PPC, Judge Johnson ruled that New Jersey law applied to the issue of punitive damages, using New Jersey choice-of-law principles. See 12-cv-7263, Doc. No. 35, Ex. C. New Jersey choice-of-law analysis is similar to Pennsylvania's in that it considers the governmental interests of each state and then determines which state has the most significant relationship to the parties. See Lebegern v. Forman, 471 F.3d 424, 428-29, 433 (3d Cir. 2006). Lyles, however, is distinguishable. Because Judge Johnson was presiding in a New Jersey state court using New Jersey

---

07084, 2015 WL 1637722, at *4  (S.D. W.V. 2015)(finding that the law of the place of injury applied to punitive damages, not the place of corporate conduct, because injury is the last event necessary for liability in line with the relevant choice-of-law principles)(declining to follow Zimmerman and Aguirre Cruz); Sanchez v. Boston Scientific Corp., 38 F.Supp.3d 727, 739-40 (S.D. W.V. 2014)(same); Atkinson v. Forest Research Institute, Inc., Nos. 13–1832, 13–4703, 2014 WL 2773657, at *4-5 (D.N.J. Jun. 18, 2014)(applying New Jersey choice-of-law, finding that Indiana law applied to claims, not New Jersey law, because injury/death, drug ingestion, warnings about drug, plaintiff's treatment occurred there); id. at *5 ("Although there may have been some relevant conduct that occurred in New Jersey—indeed, Forest Research Institute, Inc. is based there—Plaintiffs fail to identify any activity that is particular to that state.").

[40] As Comment c specifically states, the state where relevant corporate conduct occurred *may* have more of an interest in having its punitive damages rules applied. However, the purpose sought to be achieved by a tort rule—whether to punish tortfeasors or to compensate victims—"must not be over-emphasized." Restatement (Second) Conflict of Laws § 145, cmt. c. "Frequently, it will be possible to decide a question of choice of law in tort without paying deliberate attention to the purpose sought to be achieved by the relevant tort rules of the interested states. This will be so whenever by reason of the particular circumstances one state is obviously that of the applicable law." Id. While the purpose of the statutes is important, it is but one consideration which is not dispositive of which state's punitive damages law applies.

choice-of-law principles, he found New Jersey had a greater interest in having its punitive damages law applied. See 12-cv-7263, Doc. No. 35, Ex. C at 9 ("Regardless of any choice of law considerations urged by the Plaintiff, the fact remains that the Defendant is a New Jersey citizen and this is a New Jersey Court."). Judge Johnson also indicated that New Jersey policies would be frustrated if Alabama's wrongful death statute were applied to the defendants, New Jersey citizens. See id. ("Were McNeil a resident of Alabama, this Court's decision would likely be different, but neither the Constitution of our state, New Jersey statutory law nor our common law permit punishment of a defendant in a civil tort trial without an initial finding of conduct warranting punishment.").  Given that I am sitting in a federal court in Pennsylvania applying Pennsylvania choice-of-law principles, New Jersey's interests in this case hold less weight than they did in Lyles. Instead, the law of the location of the injury holds greater significance.[41]

---

[41] The defendants argue that the location of the injury should have little weight because it is "simply fortuitous" with respect to punitive damages. Doc. No. 35 at 5. This is both wrong and wrong-headed. "Fortuitous" is a curious word to use in reference to a death by liver failure. To be sure, there is nothing "fortuitous" about the decedent's experience with Tylenol or liver failure in Alabama. Nor is it fortuitous that McNeil chose to market its product in Alabama. The defendants marketed Tylenol in Alabama to consumers, including the plaintiff, and sold Tylenol there. The plaintiff lived in Alabama. The fact that her death occurred there is not "fortuitous." See Rowland,  983 F.Supp.2d  at 625, 625 n. 10 ("When the Plaintiffs are domiciled in the place of injury, purchase the product in question there, and use it there, the place of injury is not fortuitous. Id. Here, realistically this particular injury to these particular Plaintiffs could not have occurred anywhere other than Pennsylvania. It was not fortuitous that the Plaintiffs were injured in Pennsylvania, and the Court affords weight to this factor....Give that Zometa was marketed into and prescribed in Pennsylvania, and the Plaintiffs lived in Pennsylvania, this Court cannot conclude that the place of injury —Pennsylvania—was a matter of fortuity."); Yocham v. Novartis Pharmaceuticals Corp., 736 F.Supp.2d 875, 882 (D.N.J. 2010)("Where a party is domiciled in the place of injury, purchases the allegedly defective product there, and uses it only there, the place of injury is not fortuitous.")

This is another reason why Zimmerman, Stromenger, and Aguirre Cruz are not persuasive. All found that the place of injury was "fortuitous" to the issue of punitive damages. Zimmerman,  889 F.Supp.2d at 762-63; Stromenger, 941 F.Supp.2d at 1297 (quoting Zimmerman); Aguirre Cruz, 435 F.Supp.2d  at 707.

Viewing the facts in light of the relevant policies, Alabama has more significant contacts with the decedent and her injuries in this case. The decedent purchased Tylenol in Alabama, she ingested Tylenol in Alabama, she was treated for injuries allegedly related to Tylenol in Alabama, and died in Alabama. She received warnings about Tylenol in Alabama and presumably viewed advertising about Tylenol in Alabama. The parties' consumer relationship was based in Alabama. These contacts outweigh the defendants' contacts to New Jersey and Pennsylvania.[42] Alabama law shall apply to the plaintiff's wrongful death and punitive damages claims.[43]

---

[42] See Wolfe v. McNeil-PPC, Inc., 703 F.Supp.2d 487, 494 (E.D. Pa. 2010); Knipe v. SmithKline Beecham, 583 F.Supp.2d 602, 638 (E.D. Pa. 2008); Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 193-94 (E.D. Pa. 2007); Bearden v. Wyeth, 482 F.Supp.2d 614, 621-22 (E.D. Pa. 2006); Henderson v. Merck & Co., Inc., No. 04-CV-05987-LDD, 2005 WL 2600220, at *7-8 (E.D. Pa. Oct. 11, 2005).

[43] The defendants also argue that the language of the wrongful death statute precludes its application in courts sitting outside of Alabama. The statute states that "[a] personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama where provided for in subsection (e), and not elsewhere…." Ala.Code § 6-5-410(a) (1975). The defendants would have me interpret this language as barring my application of this statute to this case. They do not offer case law to support this argument. I have found none either. See also Jones v. Hawker Beechcraft Corp., 994 F.Supp.2d 1309, 1317 n. 1 (N.D. Ga. 2014); Maddox v. Integro USA, Inc., No. 12–1641, 2013 WL 1155249, at *2 (E.D. La. Mar. 19, 2013). Numerous federal courts outside of Alabama have applied the Alabama wrongful death statute to claims premised on diversity. See, e.g., In re Asbestos Products Liability Litigation (No. VI)(Corley, et al. v. Long-Lewis, Inc., et al.), No. 10–61113, 2011 WL 3269324, at *1 (E.D. Pa. Jul. 25, 2011); In re Rezulin Products Liability Litigation, 133 F.Supp.2d 272, 287 n. 49 (S.D. N.Y. 2001); Jones v. Hawker Beechcraft Corp., 994 F.Supp.2d 1309, 1317-18 (N.D. Ga. 2014); Frazier v. Jackson, No. 3:12cv0564, 2013 WL 3789715, at *3 (E.D. Tenn. Jul. 19, 2013); In re Trasylol Products Liability Litigation (Summerlin v. Bayer Corp., et al.), No. 08–80903, 2010 WL 5140439, at *3 (S.D. Fla. Feb. 26, 2010). I do not find this argument to be persuasive. If the defendants do find case law showing that this court does not have jurisdiction to hear this case, then they can always re-raise this argument in a dispositive motion.

The defendants make another jurisdictional argument about the statute. They claim that the plaintiff is time-barred from bringing her wrongful death claim because she had not been formally appointed as personal representative of the estate until after she filed suit and the two-year limitations period had run. This argument may be valid. The defendants are correct under Alabama precedent that a suit filed by an administrator who is not formally appointed until after the two-year limitations period has run is considered a "nullity." See Downtown Nursing Home, Inc. v. Pool, 375 So.2d 465, 466 (Ala. 1979)(citing Hatas v. Partin, 175 So.2d 759 (Ala. 1965)); Waters v. Hipp, 600 So.2d 981, 982 (Ala. 1992). However, the facts surrounding Ms. Terry's appointment as personal representative of the estate may be important to whether the wrongful death claim goes forward. See Wood v. Wayman, 47 So.3d 1212, 1217-18 (Ala. 2010). See also Holyfield v. Moates, 565 So.2d 186, 188-90 (Ala. 1990). The defendants argue that she did not become appointed personal representative of the estate until September 24, 2013, more than two years after her sister died on August 31, 2010. No other information beyond this point has been provided and the issue has not been briefed by the parties. The purpose of this motion is to determine the applicable choice of law. I do not find this argument relevant to this motion. If the defendants find that the wrongful death claim is no longer legally viable

## III.   CONCLUSION

For the foregoing reasons, Alabama law shall be applied to all of the plaintiff's claims in this case.[44]

---

under Alabama law based on the facts of the case and this legal theory, they can address this point in a dispositive motion.

[44] The defendants implicitly argue that I should decline to apply Alabama's wrongful death statute because it raises constitutional questions under the due process clause based on recent Supreme Court precedent State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), and BMW of N. Am. v. Gore, 517 U.S. 559 (1996). The constitutionality of a specific law is not a factor relevant to the choice-of-law analysis. It is more appropriately addressed in a dispositive motion and/or an interlocutory appeal. However, I will briefly address the case law on the statute's constitutionality to explain why it is not *per se* illegal.

Alabama's wrongful death statute goes back to the 1800s. It was upheld by the Supreme Court in Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112 (1927). Its constitutionality has not been explicitly revisited by the Supreme Court since.

The statute, like Alabama's other punitive damages statutes, provides juries with great discretion in fashioning an award. "Under Alabama law, a jury's verdict is presumed correct and a motion for new trial or remittitur based on alleged excessiveness of a punitive damages award will be denied unless it is determined that the verdict is excessive as a matter of law or is the result of passion, bias, corruption, or other improper motive." Lemond Const. Co. v. Wheeler, 669 So.2d 855, 862 (Ala. 1995).

While Alabama courts may not necessarily interfere in the jury's providence before a verdict is rendered, beyond offering appropriate jury instructions, Alabama requires courts to review punitive damages awards post-verdict for "excessiveness" and record his/her reasons for reducing an award or keeping it intact. See Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala. 1986)("Therefore, it is not only appropriate, but indeed our duty, to require the trial courts to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages."). The Alabama Supreme Court has enumerated a non-exhaustive list of factors courts should consider in this post-verdict review: 1) the culpability of the defendant's conduct, 2) the desirability of discouraging others from similar conduct, 3) the impact upon the parties, 4) the reasonable relationship between the harm done and damages awarded, 5) the degree of reprehensibility of the defendant's conduct, 6) the profitability of the wrongful conduct and the punitive damages effect on this profit, 7) the financial position of the defendant, 8) the costs of litigation, 9) whether criminal sanctions have been imposed and would mitigate the award, and 10) what other civil action awards against the defendant for the same conduct have been. Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala. 1986); Green Oil Co. v. Hornsby, 539 So.2d 218, 223-24 (Ala. 1989).

In 1991, the Supreme Court considered whether Alabama's scheme of allowing wide jury discretion in fashioning punitive damages awards, coupled with its post-verdict review, violated the due process clause of the U.S. Constitution in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991). The Court found that this use of post-verdict review was constitutional and did not violate due process. Id. at 21-23. See also BMW of North America, Inc. v. Gore, 517 U.S. 559, 567 (1996)("The court's excessiveness inquiry applied the factors articulated in Green Oil Co. v. Hornsby, 539 So.2d 218, 223–224 (Ala.1989), and approved in Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21–22, 111 S.Ct. 1032, 1045–1046, 113 L.Ed.2d 1 (1991). 646 So.2d, at 624–625."). Haslip provided guidance on when excessive punitive damages may constitute a due process violation but did not create any bright line rules. Haslip, 499 U.S. at 18. While the Court did not talk specifically about Alabama's wrongful death statute, and that statute was not involved in the case, Haslip did cite positively to Louis Pizitz and did nothing to disturb it. Haslip, 499 U.S. at 14, 15, 17.

The question of the wrongful death's statute's constitutionality has been posed to the Alabama Supreme Court on several occasions. See Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999)(citing several Alabama Supreme Court cases rejecting challenges to wrongful death constitutionality). In Lemond Const. Co. v. Wheeler, a defendant questioned whether Alabama's damages scheme for wrongful death was constitutional based on a due process argument. 669 So.2d 855, 863 (Ala. 1995). The state supreme court affirmed the damages award, finding that there was sufficient evidence of wanton behavior to warrant the damages imposed. Judge Maddox wrote separately in a concurrence and explained his reasoning on why the statute remains constitutional under Louis Pizitz. Lemond Constr. Co., 669 So.2d at 864-67 (Maddox, J., concurring).

The state supreme court issued its decision on September 29, 1995. The decision was appealed to the Supreme Court of the United States. The execution of judgment was stayed by the Supreme Court on November 6, 1995. 116 S.Ct. 413 (1995). The Court then denied *certiorari* on February 26, 1996. Lemond Constr. Co. v. Wheeler, No. 95-1038, 116 S.Ct. 1017 (1996).

At that same time, BMW of North America, Inc. v. Gore, another case involving punitive damages from Alabama, was pending before the Supreme Court. BMW was decided by the Alabama Supreme Court on August 19, 1994 and *certiorari* was granted on that case on January 23, 1995. See 646 So.2d 619 (Ala. 1994), *certiorari* granted, 513 U.S. 1125 (1995). BMW was argued on October 11, 1995 and decided on May 20, 1996. 517 U.S. 559 (1996).

In BMW, the Supreme Court specifically discussed the constitutionality of Alabama's punitive damages scheme— of allowing juries great discretion in fashioning a punitive damages award and then reviewing the award under Green Oil post-verdict. Id. at 565-69. The court specifically noted Haslip, as approving these factors. Id. at 566. Mindful of Haslip and Green Oil, the court provided further guidance on when punitive damages would violate due process but did not reverse or overrule Haslip. See id. at 566-86 (discussing appropriate guideposts and citing to Haslip throughout). As in Haslip, BMW did not create any bright line rules. Id. at 582-83, 585.

In 2003, State Farm Mut. Auto. Ins. Co. v. Campbell, the Supreme Court revisited BMW. 538 U.S. 408 (2003). It offered additional guidance for courts on BMW's "guideposts" in reviewing punitive damage awards for due process violations. Id. at 418-29. The Court again cited Haslip and declined to institute a bright line rule regarding when damages are *per se* excessive. Id. at 416, 417, 423, 425, 428. In later years, Philip Morris USA v. Williams, 549 U.S. 346 (2007), and Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008), further considered the limits of punitive damages under due process. Both again cited to Haslip as relevant law. See Philip Morris USA, 549 U.S. at 352, and Exxon Shipping Co., 554 U.S. at 495, 502. It is clear that Haslip remains good law and controls in this case.

The Alabama Supreme Court has also discussed the constitutionality of the wrongful death statute in light of BMW. In Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999), the Alabama Supreme Court specifically addressed the issue of whether the wrongful death statute was constitutional under BMW v. Gore and found it still to be good law. See Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 890-91 (Ala. 1999)("We see nothing in BMW v. Gore that should cause us to revisit the long-standing conclusion that the legislatively authorized action for wrongful death is intended to punish the wrongdoer and the long-standing rule that the phrase 'such damages as the jury may assess' is to be interpreted in light of that purpose. The Legislature declined in 1987 to disturb the 135–year–old application of that law; it affirmatively declined to amend that law when it otherwise enacted tort reform legislation to affect punitive-damages awards in actions other than actions based on wrongful death. The Supreme Court of the United States declined to disturb the statute, as applied, in Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116, 47 S.Ct. 509, 71 L.Ed. 952 (1927). We are not persuaded that it would do otherwise now, or that there is any other reason to overrule both recent and time-honored cases that have applied this interpretation of the statute.").

The Alabama Supreme Court was again asked to review the statute in light of BMW in 2012. Boudreaux v. Pettaway, 108 So. 3d 486, 496-98 (Ala. 2012), *overruled on other grounds by* Gillis v. Frazier, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014)("We accept Dr. Gillis's invitation to overrule Boudreaux to the extent that it held that, in calculating a defendant's assets, the trial court may consider the contents of the claim file compiled by a defendant's liability-insurance carrier and include among the defendant's assets a potential bad-faith and/or negligent-failure-to-settle claim against the defendant's liability-insurance carrier."). In Boudreaux v. Pettaway, the

An appropriate Order follows.

---

defendant argued that damages awarded under the wrongful death statute were unconstitutional because they did not comply with <u>BMW</u>'s directives on providing due process. 108 So.3d 486, 496-99 (Ala. 2012). Relying on <u>Tillis</u>, <u>Boudreaux</u> again rejected the argument that the award was unconstitutional because the award was subject to a "proportionality review" by the court in determining if the award was proportionate to the conduct of the defendant and resulting harm. <u>Id.</u> at 499.

Given this overview of Supreme Court and Alabama precedent, I cannot say that Alabama's wrongful death statute is *per se* unconstitutional. If the parties disagree, they can raise their arguments in a dispositive motion.