# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: TYLENOL (ACETAMINOPHEN) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | §<br>§<br>§<br>§<br>§<br>§ | **MDL NO. 2436**<br><br>**2:13-md-02436**<br><br>**HON. LAWRENCE F. STENGEL** |

This Document Relates to:

Civil Action No. 2:12-cv-07263

| | |
|---|---|
| Rana Terry, as Personal Representative and Administrator of the Estate of Denice Hayes, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>McNEIL-PPC, Inc., McNeil Consumer Healthcare, and Johnson & Johnson, Inc.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

# M E M O R A N D U M

**Stengel, J.**                                                   **November 13, 2015**

This case is part of a Multidistrict Litigation (MDL) involving claims of liver damage from the use of Tylenol.[1] The court chose this case for the first "bellwether"

---

[1] There are close to two hundred other cases included in this MDL; twenty similar cases were brought in New Jersey state court.

trial.[2] Plaintiff Rana Terry claims that her sister, Denice Hayes, died of acute liver failure after taking Tylenol "as directed."[3] All events relevant to this claim took place in Alabama; Ms. Terry and Ms. Hayes were Alabama residents. The decedent's sister asserted a wrongful death claim against Johnson & Johnson and McNeil—the makers of Tylenol—on behalf of her estate.[4] The defendants argue that the Alabama wrongful death statute is unconstitutional under BMW of N. Am. v. Gore, 517 U.S. 559 (1996), and its progeny. They have moved for summary judgment. For the reasons set forth below, I will deny their motion for summary judgment.

## I.        The Alabama Wrongful Death Statute

In Alabama, a wrongful death action is statutory and does not exist at common law. See, e.g., Downtown Nursing Home, Inc. v. Pool, 375 So. 2d 465, 466 (Ala. 1979). The Alabama wrongful death statute, Ala. Code. § 6-5-410(a)(1975), is like no other in the United States.[5] "In Alabama, only punitive damages are available in wrongful death actions, and these damages may be awarded against a defendant based on its negligent

---

[2] A "bellwether" case is a test case. "Bellwether" trials should produce representative verdicts and settlements. The parties can use these verdicts and settlements to gauge the strength of the common MDL claims to determine if a global resolution of the MDL is possible. See FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH EDITION 360 (2004); DUKE LAW CENTER FOR JUDICIAL STUDIES, MDL STANDARDS AND BEST PRACTICES 16-21 (2014).

[3] See Compl., 12-cv-07263, Doc. No. 1.

[4] I previously found that Alabama, not New Jersey, law applied to the plaintiff's wrongful death claim. See Doc. No. 40, 41 (Punitive Damages Choice of Law decision); In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation (Terry v. McNeil, et al.), 13-md-2436, Civil Action No. 2:12–cv–07263, 2015 WL 2417411 (E.D. Pa. May 20, 2015).

[5] For a more elaborate discussion of the unique nature of Alabama's wrongful death statute, see Doc. No. 40 (Punitive Damages Choice of Law decision); In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation (Terry v. McNeil, et al.), 13-md-2436, Civil Action No. 2:12–cv–07263, 2015 WL 2417411 (E.D. Pa. May 20, 2015).

conduct." Alabama Power Co. v. Turner, 575 So.2d 551, 556 (Ala. 1991), *cert. denied*, 500 U.S. 953 (1991).[6] The statute does not allow for compensatory damages or consideration of the decedent's losses. See, e.g, Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1065 (11th Cir. 2010); Ala. Pattern Jury Inst. 11.28. The focus of a wrongful death claim under Alabama law is on the defendants' conduct. See, e.g., Atkins v. Lee, 603 So. 2d 937, 943 (Ala. 1992)(quoting Ala. Pattern Jury Inst. 11.28).The Alabama legislature and courts have made clear: the statute is intended to protect lives by imposing damages on tortfeasors causing death. See, e.g., Hatas v. Partin, 175 So. 2d 759, 761 (Ala. 1965).[7] By making a wrongful death "expensive," Alabama seeks to deter similar

---

[6] See, e.g., Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission."(citations omitted)); Savannah & M.R. Co. v. Shearer, 58 Ala. 672, 680 (1877)("The damages [under the wrongful death statute] are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.'"); Campbell v. Williams, 638 So.2d 804, 809 (Ala. 1994); Boudreaux v. Pettaway, 108 So.3d 486, 496-98 (Ala. 2012)(reaffirming the purpose of the wrongful death statute as protecting the lives of Alabama citizens), *overruled on other grounds by*, Gillis v. Frazier, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014).

[7] See also Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission."(citations omitted)); Savannah & M.R. Co. v. Shearer, 58 Ala. 672, 680 (1877)("The damages [under the wrongful death statute] are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.'"); Geohagan v. General Motors Corp., 279 So.2d 436, 439 (Ala. 1973)("Our decisions since the enactment of our wrongful death acts have made it clear that such acts are intended to protect human life, to prevent homicide, and to impose civil punishment on takers of human life. The damages awarded are punitive in nature. The personal representative in prosecuting a wrongful death action acts as an agent of legislative appointment for declaring the public policy evidenced by the wrongful death acts."); Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 818 (Ala. 1988)("[T]he statute is 'punitive' in its purposes, but that '[p]reservation of life-prevention of its destruction by the wrongful acts or omission of another, is the subject of the statute; and all its provisions are but machinery for carrying it into effect.'"); Alabama Power Co. v. Turner, 575 So.2d 551, 556 (Ala. 1991), *cert. denied*, 500 U.S. 953 (1991)("The protection of the lives of its citizens is certainly a legitimate state interest. By allowing punitive damages to be assessed against defendants in wrongful death actions in a manner different from the way punitive damages are assessed in other civil actions, the legislature has undoubtably recognized that no arbitrary cap can be placed on the value of human life and is 'attempt [ing] to preserve human life by making homicide expensive.'" (quoting Louis Pizitz Dry Goods, 274 U.S. at 116)); Lemond Const. Co. v. Wheeler, 669 So.2d 855, 864-67 (Ala. 1995)(Maddox, J., concurring); Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999); Boudreaux v. Pettaway, 108 So.3d 486, 496-98 (Ala. 2012)(reaffirming the purpose of the wrongful death statute as protecting the lives of Alabama citizens), *overruled on other grounds by*, Gillis v. Frazier, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014).

tortious conduct. See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116 (1927)(explaining that the Alabama statute was an "attempt to preserve human life by making homicide expensive"); Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999)(explaining that the goal of the statute is "preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death")(citation omitted)).

"In calculating a damage award, an Alabama Wrongful Death Act jury is instructed to consider: (1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1065 (11th Cir. 2010)(citing Tillis Trucking, 748 So.2d at 889). "Because the policy of [Alabama] is to regard human life as being beyond measure in terms of dollars, the jury must disregard the decedent's wealth or lack of wealth, it must disregard the decedent's potential for accumulating great wealth or lack of potential to accumulate wealth; and it must disregard his or her talents and education, or lack of them, as well as his or her station in life." Campbell v. Williams, 638 So.2d 804, 811 (Ala. 1994).

The statute and its punitive scheme date back to the late 1800s.[8] See Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The legislation now

---

[8] See, e.g., Louis Pizitz Dry Goods Co., Inc. v. Yeldell, 274 U.S. 112, 114 (1927)("The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission."(citations

challenged has been on the statute books of Alabama in essentially its present form since 1872."); Savannah & M.R. Co. v. Shearer, 58 Ala. 672, 680 (1877). The United States Supreme Court first considered its constitutionality in 1927. In Louis Pizitz Dry Goods Co., Inc. v. Yeldell, the defendant challenged the statute's constitutionality under the Fourteenth Amendment, claiming it was "unreasonably oppressive, arbitrary, unjust, violative of the fundamental conceptions of fair play…." 274 U.S. 112, 114 (1927)(quotation marks omitted). The main issue was whether an employer could be vicariously liable under the statute. Id. at 113-14. The Court recognized the statute's unique character:  "This statute authorizes the recovery of damages from either a principal or an agent, in such amount as the jury may assess, for wrongful act or negligence causing death…the damages, which may be punitive even though the act complained of involved no element of recklessness, malice, or willfulness, may be assessed against the employer who, as here, is personally without fault." Id.

Nonetheless, the Court found that imposing "punitive" damages for mere negligence was not *per se* unconstitutional:

> As interpreted by the state court, the aim of the present statute is to strike at the evil of the negligent destruction of human life by imposing liability, regardless of fault, upon those who are in some substantial measure in a position to prevent it. We cannot say that it is beyond the power of a Legislature…to attempt to preserve human life by making homicide expensive.

---

omitted)); Hatas v. Partin, 175 So.2d 759, 761 (Ala. 1965)("This statute authorizes suit to be brought by the personal representative for a definite legislative purpose—to prevent homicide."); Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 818 (Ala. 1988)("[T]he statute is 'punitive' in its purposes, but that '[p]reservation of life-prevention of its destruction by the wrongful acts or omission of another, is the subject of the statute; and all its provisions are but machinery for carrying it into effect.'"). See also Susan Randall, Only in Alabama: A Modest Tort Agenda, 60 ALA. L. REV. 977, 981-85 (2009)(discussing the history of the Alabama wrongful death statute and its treatment by the judiciary and legislature).

Id. at 116. The Court noted that "[t]he distinction between punitive and compensatory damages [was] a modern refinement." Id. at 116.[9] The Court ultimately upheld the statute to be constitutional, despite its unique nature. Id. at 116. The Supreme Court has not revisited Louis Pizitz since. It remains good law.[10]

The Alabama statute has remained virtually unchanged.[11] The Alabama Legislature has declined to alter its unique character, even during tort reform efforts in the late 1980s and 1990s.[12] The Alabama Supreme Court has continually upheld the statute as constitutional.[13]

---

[9] See also Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (2001)(citations omitted)("Although compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter, which have been described as 'quasi-criminal'… operate as 'private fines' intended to punish the defendant and to deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation."); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)("By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution."); Id. at 419 ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.").

[10] See Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 14, 15, 17 (1991)(citing positively to Pizitz).

[11] See Lemond Const. Co. v. Wheeler, 669 So.2d 855, 864 (Ala. 1995)(Maddox, J., concurring)("In the past, this Court has been requested on more than one occasion to fashion a different rule of law in cases such as this. This Court has been unwilling to change the law. The Legislature has not elected to change the law."); Tillis Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999)(citing several cases rejecting challenges to wrongful death policy considerations); Campbell v. Williams, 638 So.2d 804, 808-09 (Ala. 1994)(explaining history of the statute); Lemond Const. Co. v. Wheeler, 669 So.2d 855, 863-64 (Ala. 1995)(rejecting constitutional challenge). See also Susan Randall, Only in Alabama: A Modest Tort Agenda, 60 ALA. L. REV. 977, 981-85 (2009)(discussing the history of the Alabama wrongful death statute and its treatment by the judiciary and legislature).

[12] See also Lemond Const. Co. v. Wheeler, 669 So.2d 855, 864 (Ala. 1995)(Maddox, J., concurring)("In the past, this Court has been requested on more than one occasion to fashion a different rule of law in cases such as this. This Court has been unwilling to change the law. The Legislature likewise has not elected to change the law."); McKowan v. Bentley, 773 So. 990, 1000 (Ala. 1999)(Houston, J., concurring)(explaining that tort reform efforts in 1987 and 1999 put legislative imprimatur on the Court's interpretation of § 6-5-410).

[13] See, e.g, Lemond Const. Co. v. Wheeler, 669 So.2d 855, 864 (Ala. 1995)(Maddox, J., concurring)("In the past, this Court has been requested on more than one occasion to fashion a different rule of law in cases such as this. This Court has been unwilling to change the law. The Legislature likewise has not elected to change the law."); Tillis

## II.     Appellate Review of Punitive Damages in Alabama

Like other punitive damage awards in Alabama, jury verdicts in wrongful death cases are subject to a post-verdict review. See, e.g., Lemond Const. Co. v. Wheeler, 669 So.2d 855, 857, 862-63 (Ala. 1995). Alabama juries are given considerable discretion in fashioning punitive damage awards. See, e.g., Green Oil Co. v. Hornsby, 539 So.2d 218, 222 (Ala. 1989).[14] Trial judges, however, are required to review punitive damage awards to determine if they are "excessive as a matter of law or [are] the result of passion, bias, corruption, or other improper motive." Lemond, 669 So.2d at 862. See also Hammond v. City of Gadsden, 493 So.2d 1374, 1378-79 (Ala. 1986). Trial judges must "reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages." Hammond, 493 So.2d at 1379. The trial judge should ensure that the punitive damages award is tailored to both the wrongful act and the tortfeasor. Green Oil Co., 539 So.2d at 223. Punitive damages "must not exceed an amount that will accomplish society's goals of punishment and deterrence." Id. at 222.

The Alabama Supreme Court has enumerated a non-exhaustive list of factors trial judges should consider during post-verdict review:

---

Trucking Co., Inc. v. Moses, 748 So.2d 874, 889 (Ala. 1999)(citing several cases rejecting challenges to wrongful death policy considerations); Alabama Power Co. v. Turner, 575 So.2d 551, 556 (Ala. 1991), cert. denied, 500 U.S. 953 (1991)(upholding statute despite equal protection challenge); Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371, 375-78 (Ala. 1989)(considering statute under Fourteenth Amendment due process challenges, rejecting constitutional arguments); Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812, 817-18 (Ala. 1988)(considering constitutionality under Eighth Amendment, rejecting challenge). See also Susan Randall, Only in Alabama: A Modest Tort Agenda, 60 ALA. L. REV. 977, 981-85 (2009)(discussing the history of the Alabama wrongful death statute and its treatment by the judiciary and legislature).

[14] See also Lemond Const. Co. v. Wheeler, 669 So.2d 855, 862 (Ala. 1995)("Under Alabama law, a jury's verdict is presumed correct and a motion for new trial or remittitur based on alleged excessiveness of a punitive damages award will be denied unless it is determined that the verdict is excessive as a matter of law or is the result of passion, bias, corruption, or other improper motive.").

1) The reasonable relationship between the punitive damages award and the harm actually done as well as the harm that could have resulted from the defendant's conduct;

2) The degree of reprehensibility of the defendant's conduct, including the duration of the conduct, the defendant's degree of awareness of its hazardousness, any concealment or the potential hazard, and the frequency of similar past conduct;

3) The profitability of the wrongful conduct and the punitive damages' effect on this profit;

4) The financial position of the defendant;[15]

5) All the costs of litigation, so as to encourage plaintiffs to bring wrongdoers to trial;

6) Whether criminal sanctions have been imposed and would mitigate the award;

7) Whether other civil damages have been awarded against the defendant for the same conduct and would mitigate the punitive damages award.

Hammond, 493 So.2d at 1379; Green Oil Co., 539 So.2d at 223-24. Appellate courts are then expected to review the jury verdict and the trial judge's decision on the appropriateness of the award. See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 20-21 (1991)("By its review of punitive awards, the Alabama Supreme Court provides an additional check on the jury's or trial court's discretion.").

   In 1991, the Supreme Court approved Alabama's scheme of post-verdict review as providing adequate due process under the Constitution. Haslip, 499 U.S. at 21-23.[16] See

---

[15] While the trial judge may consider the defendant's financial position on post-verdict review, the jury is not allowed to consider the defendant's wealth in determining a punitive damages award. Green Oil Co., 539 So.2d at 222.

[16] See also Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 15 (1991)("Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable.").

also BMW of North America, Inc. v. Gore, 517 U.S. 559, 567 (1996)("The court's

excessiveness inquiry applied the factors articulated in Green Oil Co. v. Hornsby, 539

So.2d 218, 223–224 (Ala.1989), and approved in Pacific Mut. Life Ins. Co. v. Haslip, 499

U.S. 1, 21–22, 111 S.Ct. 1032, 1045–1046, 113 L.Ed.2d 1 (1991). 646 So.2d, at 624–

625."). The Supreme Court found that the post-verdict review by the trial and appellate

courts provided a "full panoply of [] procedural protections." Haslip, 499 U.S. at 23.

While the Court did not talk specifically about Alabama's wrongful death statute, and

that statute was not involved in the case, Haslip did cite positively to Louis Pizitz and did

nothing to disturb it. Haslip, 499 U.S. at 14, 15, 17. The defendants argue that Supreme

Court precedent after Haslip has rendered the wrongful death statute unconstitutional.

### III.    Facial Constitutional Challenge Legal Standard

There are no pertinent facts. This motion involves a purely legal question: whether

Alabama's wrongful death statute is consistent with the due process limitations on

punitive damages established in post-Haslip Supreme Court decisions.[17] The defendants

challenge Alabama's wrongful death statute on its face, not "as-applied."[18] "A party

asserting a facial challenge 'must establish that no set of circumstances exists under

---

[17] The plaintiff frames this as a procedural due process challenge. The defendants do not specify whether the challenge is procedural and/or substantive but do interpret BMW v. Gore as implicating both procedural and substantive due process limitations. Defendants' Motion, Doc. No. 47 at 7, 8. The majority in Gore does not define the Due Process right at issue as either procedural or substantive. Only the dissent indicates that the right is "substantive." See Gore, 517 U.S. at 599-600 (Scalia, J., dissenting)("The most significant aspects of today's decision—the identification of a 'substantive due process' right against a 'grossly excessive' award, and the concomitant assumption of ultimate authority to decide anew a matter of 'reasonableness' resolved in lower court proceedings—are of course not new."). From the caselaw, I see no difference in whether the challenge is "substantive" versus "procedural" but note that this distinction may be vague.

[18] An "as-applied" challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." Heffner v. Murphy, 745 F.3d 56, 65 (3d Cir. 2014)(quoting United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010)).

which the Act would be valid.'" <u>Heffner v. Murphy</u>, 745 F.3d 56, 65 (3d Cir.

2014)(quoting <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)(citation and quotation

marks omitted)). This is the "most difficult challenge to mount successfully." <u>Salerno</u>,

481 U.S. at 745. Facial challenges to legislation in the non-First Amendment context are

generally disfavored. <u>See</u> <u>U.S. v. Mitchell</u>, 652 F.3d 387, 406 (3d Cir. 2011)(en banc);

<u>National Endowment for the Arts v. Finley</u>, 524 U.S. 569, 580 (3d Cir. 1998)(citations

omitted); <u>Lutz v. City of York, Pa.</u>, 899 F.2d 255, 271 (3d Cir. 1990)(citing <u>Salerno</u>, 481

U.S. at 745).

## IV.   Supreme Court Precedent on Punitive Damages

The defendants argue that Alabama's wrongful death statute is unconstitutional

under the due process clause of the Fourteenth Amendment based on Supreme Court

precedent <u>BMW of N. Am. v. Gore</u>, 517 U.S. 559 (1996), and <u>State Farm Mut. Auto. Ins.

Co. v. Campbell</u>, 538 U.S. 408 (2003).[19] "The Due Process Clause of the Fourteenth

Amendment prohibits a State from imposing a 'grossly excessive' punishment on a

tortfeasor." <u>Gore</u>, 517 U.S. at 562 (citing <u>TXO Production Corp. v. Alliance Resources

Corp.</u>, 509 U.S. 443, 454 (1993)). <u>See also</u> <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>,

538 U.S. 408, 417 (2003)("To the extent an award is grossly excessive, it furthers no

legitimate purpose and constitutes an arbitrary deprivation of property.")(citation

---

[19] The defendants previously raised this issue in their briefing of the choice of law on this claim. Finding that it was not appropriate for that analysis, I declined to formally address the argument. I directed them to re-raise the constitutional challenge in a dispositive motion. <u>See</u> Doc. No. 41 (Punitive Damages Choice of Law decision); <u>In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation</u> (<u>Terry v. McNeil, et al.</u>), 13-md-2436, Civil Action No. 2:12–cv–07263, 2015 WL 2417411, at *7 n. 44 (E.D. Pa. May 20, 2015).

omitted). <u>Gore</u> and <u>State Farm</u> both discuss when a punitive damages award may be "grossly excessive" and, therefore, unconstitutional.

### a. **BMW v. Gore**

<u>BMW v. Gore</u> was a consumer protection case out of Alabama involving non-disclosure of an automobile paint defect. 517 U.S. 559, 563 (1996). At trial, the plaintiff introduced evidence that such non-disclosure was part of BMW's nationwide corporate policy. <u>Gore</u>, 517 U.S. at, 563-64. The jury awarded the plaintiff $4000 in compensatory damages and $4 million in punitive damages. <u>Id.</u> at 565. As required by Alabama law, the trial judge reviewed the punitive damages award and found it was not excessive. <u>Id.</u> at 566.

On appellate review, the Alabama Supreme Court found that award was appropriate based on the <u>Green Oil</u> factors. <u>Id.</u> at 566-67. However, the court reduced the award to $2 million because the jury had improperly computed the damages based on the defendant's conduct in other states where non-disclosure was not *per se* illegal. <u>Id.</u> at 567.

The Supreme Court granted certiorari in order to provide further guidance on the issue of "excessiveness." <u>Id.</u> at 568. The Court agreed with the Alabama Supreme Court's determination that punitive damages awards should not "impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." <u>Id.</u> at 568-72. "The award must be analyzed in the light of the same conduct, with consideration given only to the interests of Alabama consumers, rather than those of the entire Nation." <u>Id.</u> at 574. The Court specifically discussed the constitutionality of Alabama's punitive damages scheme—of allowing juries great discretion in fashioning a

11

punitive damages award and then giving courts authority to review the award under

Green Oil post-verdict. Id. at 565-69. The Court noted Haslip, as approving these factors,

and did not disturb its holding. Id. at 566-86 (discussing appropriate guideposts and citing

to Haslip throughout).

Nonetheless, the Court found that the reduced award still violated due process

because the defendant was not given "fair notice" of the severity of the penalty Alabama

might impose. Id. at 574. The Court offered three "guideposts" for determining when a

defendant has been given adequate notice of a potential award:

1) The degree of reprehensibility;

2) The disparity between the harm or potential harm suffered by the plaintiff and
   the punitive damages award; and

3) The difference between the remedy and the civil penalties authorized to be
   imposed or which have been imposed in comparable cases.

Id. at 575.[20] The Court then elaborated on each "guidepost."

Describing "reprehensibility" as "the most important indicium of the

reasonableness of a punitive damages award," the Court explained that "some wrongs are

more blameworthy than others." Id. at 575. Non-violent crimes are less reprehensible

than violent crimes. Id. at 576. Intentional conduct, especially when targeting those who

---

[20] See also Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 439 (2001)("In Gore, we
instructed courts evaluating a punitive damages award's consistency with due process to consider three criteria: (1)
the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm)
suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages
awarded by the jury and the civil penalties authorized or imposed in comparable cases. 517 U.S., at 574–575, 116
S.Ct. 1589."); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003)("[I]n Gore, supra, we
instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the
defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the
punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil
penalties authorized or imposed in comparable cases. Id. at 575, 116 S.Ct. 1589.").

are vulnerable, is more blameworthy than accidental conduct. Id. "[T]rickery and deceit…are more reprehensible than negligence." Id. (citation omitted). Repeated unlawful conduct would be more reprehensible than mere malfeasance. Id. at 576-77. Finding that these "aggravating factors" were not present, the Court held that BMW's conduct was "purely economic" and "evinced no indifference to or reckless disregard for the health and safety of others." Id.

In discussing the second "guidepost," the Court described "the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award" as a "ratio" between compensatory and punitive damages. Id. at 580-82. As suggested in Haslip, the Court reiterated the notion that a single-digit ratio may be indicative of a constitutionally appropriate award. Id. at 581. The Court found that a ratio of 500 to 1 in Gore suggested the award was "grossly excessive." Id. at 582.

Nonetheless, the Court recognized that higher ratios may still be constitutional when compensatory damages are minimal but the defendant's conduct is "particularly egregious." Id. at 582. Higher ratios also may be justified when "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." Id. Following Haslip, the Court declined to adopt a "mathematical bright line." Id. at 583. When a ratio is substantially high, it may "raise a suspicious judicial eyebrow" but does not invalidate an award *per se*. Id.

Lastly, the Court explained that available sanctions for comparable misconduct— i.e., civil statutory fines and criminal penalties—should be considered. Id. at 583.  The Court found that the $2 million punitive damages award was much in excess of the

13

maximum civil penalties permitted in Alabama ($2000) and other states ($5000 to $10,000). <u>Id.</u> at 584. The Court suggested that "a history of noncompliance with known statutory requirements" may also affect whether an award is grossly excessive. <u>Id.</u> at 585.

Ultimately, the Court reversed and remanded <u>Gore</u> because the punitive damages award was "grossly excessive" based on its application of the "guideposts." <u>Id.</u> at 585-86.

### b.  <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>

In 2003, <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, the Supreme Court revisited <u>BMW</u>. It offered additional guidance on <u>Gore</u>'s "guideposts." <u>State Farm</u>, 538 U.S. 408, 418-29 (2003). The Court reiterated that the "reprehensibility" guidepost is "the most important indicium of the reasonableness of a punitive damages award." <u>Id.</u> at 419. The Court again explained that "reprehensibility" is based on the following "aggravating factors:"

- Whether the harm caused was physical as opposed to economic;
- Whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others;
- Whether the target of the conduct had financial vulnerability;
- Whether the conduct involved repeated actions or was an isolated incident; and
- Whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. <u>Id.</u>

More specifically, the Court explained that a jury "may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." <u>Id.</u> at 422. "Lawful out-of-state conduct may be probative when it

demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff." Id. In addition, only similar conduct should have some bearing on reprehensibility. Id. at 427.

The Court "decline[d] again to impose a bright-line ratio which a punitive damages award cannot exceed." Id. at 425. Though "[s]ingle-digit multipliers are more likely to comport with due process," the Court did not limit analysis under the second guidepost to a single-digit ratio. See id. ("While these ratios are not binding, they are instructive."). The Court restated that punitive damages awards require a case-by-case analysis. Id. "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." Id. Overall, the second guidepost required courts to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." Id. at 426.

To the last guidepost, the Court added that "[t]he existence of a criminal penalty does have bearing on the seriousness with which a State views the wrongful action." Id. at 428. But courts should avoid using punitive damages to impose criminal penalties, which are subject to heightened protections and a higher burden of proof. Id.

Four years later, the Court added a final caveat to the Gore "guideposts:" punitive damages could not punish defendants for harm caused to non-parties. Philip Morris USA v. Williams, 549 U.S. 346, 349, 353 (2007). However, similar harmful conduct towards

others can be considered in determining how reprehensible the defendants' conduct

was.[21]

### c.  Alabama's Interpretation of the <u>Gore</u> "guideposts" as applied to the Wrongful Death Statute

Though the Alabama wrongful death statute is meant to make "homicide

expensive," the Alabama Supreme Court has recognized that this does not equate to a

jury's "unbridled discretion in determining the amount of damages to impose in death

cases." <u>Cherokee Elec. Co-op. v. Cochran</u>, 706 So.2d 1188, 1194 (Ala. 1997). Wrongful

death verdicts must also comply with the <u>Gore</u> guideposts. <u>Id.</u>

The wrongful death's statute's constitutionality has been upheld by the Alabama

Supreme Court on several occasions.[22] <u>See, e.g.</u>, <u>Tillis Trucking Co., Inc. v. Moses</u>, 748

---

[21] <u>See</u> <u>Philip Morris USA</u>, 549 U.S. at 355 (2007)("Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible—although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties….We therefore conclude that the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers.") and at 357 ("We have explained why we believe the Due Process Clause prohibits a State's inflicting punishment for harm caused strangers to the litigation. At the same time we recognize that conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility.").

[22] I note that one of these due process challenges was appealed to the United States Supreme Court. In <u>Lemond Constr. Co. v. Wheeler</u>, a defendant questioned whether Alabama's damages scheme for wrongful death was constitutional based on a due process argument.  669 So.2d 855, 863 (Ala. 1995). The state supreme court affirmed the damages award, finding that there was sufficient evidence of wanton behavior to warrant the damages imposed. Judge Maddox wrote separately in a concurrence and explained his reasoning on why the statute remains constitutional under <u>Louis Pizitz</u>. <u>Lemond Constr. Co.</u>, 669 So.2d at 864-67 (Maddox, J., concurring).

The state supreme court issued its decision on September 29, 1995. The decision was appealed to the Supreme Court of the United States. The execution of judgment was stayed by the Supreme Court on November 6, 1995. 116 S.Ct. 413 (1995). The Court then denied <i>certiorari</i> on February 26, 1996. <u>Lemond Constr. Co. v. Wheeler</u>, No. 95-1038, 116 S.Ct. 1017 (1996).

At that same time, <u>BMW of North America, Inc. v. Gore</u> was pending before the Supreme Court. <u>Gore</u> was decided by the Alabama Supreme Court on August 19, 1994 and <i>certiorari</i> was granted on that case on January 23, 1995. <u>See</u> 646 So.2d 619 (Ala. 1994), <i>certiorari</i> granted, 513 U.S. 1125 (1995). <u>Gore</u> was argued on October 11, 1995 and

So.2d 874, 889 (Ala. 1999)(citing several Alabama Supreme Court cases rejecting challenges to wrongful death constitutionality). The Alabama Supreme Court has specifically reviewed its constitutionality in light of <u>Gore</u> and found it still to be good law.[23]

### d. Constitutional Arguments[24]

### 1. Reprehensibility

The defendants argue that the first "guidepost" can't be met because the Alabama wrongful death statute does not require "reprehensible" conduct. The defendants imply that merely negligent conduct cannot also be reprehensible. They argue that it would be impossible for a jury and reviewing court to calculate an award based on mere negligence, as opposed to intentional or wanton negligence. I disagree.

---

decided on May 20, 1996. 517 U.S. 559 (1996). Given this timeline, it is clear that the United States Supreme Court has been made aware of the same arguments made by the defendants. Nonetheless, the Court did not speak directly to the statute nor decide to take up the issue.

[23] <u>See</u> <u>Tillis Trucking Co., Inc. v. Moses</u>, 748 So.2d 874, 890-91 (Ala. 1999)("We see nothing in <u>BMW v. Gore</u> that should cause us to revisit the long-standing conclusion that the legislatively authorized action for wrongful death is intended to punish the wrongdoer and the long-standing rule that the phrase 'such damages as the jury may assess' is to be interpreted in light of that purpose. The Legislature declined in 1987 to disturb the 135–year–old application of that law; it affirmatively declined to amend that law when it otherwise enacted tort reform legislation to affect punitive-damages awards in actions other than actions based on wrongful death. The Supreme Court of the United States declined to disturb the statute, as applied, in <u>Louis Pizitz Dry Goods Co. v. Yeldell</u>, 274 U.S. 112, 116, 47 S.Ct. 509, 71 L.Ed. 952 (1927)). We are not persuaded that it would do otherwise now, or that there is any other reason to overrule both recent and time-honored cases that have applied this interpretation of the statute."); <u>Boudreaux v. Pettaway</u>, 108 So. 3d 486, 496-99 (Ala. 2012), <em>overruled on other grounds by</em> <u>Gillis v. Frazier</u>, --- So.3d ----, 2014 WL 3796382, at *6 (Ala. Aug. 1, 2014)("We accept Dr. Gillis's invitation to overrule <u>Boudreaux</u> to the extent that it held that, in calculating a defendant's assets, the trial court may consider the contents of the claim file compiled by a defendant's liability-insurance carrier and include among the defendant's assets a potential bad-faith and/or negligent-failure-to-settle claim against the defendant's liability-insurance carrier.").

[24] The defendants offer <u>Lyles v. McNeil-PPC, et al.</u>, a decision in a similar New Jersey case to support their arguments. I do not find <u>Lyles</u> persuasive. The decision offers little analysis and was made with different considerations (i.e., choice of law) in mind.

The Supreme Court has found that punitive damages for a negligent death may be appropriate.  See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116 (1927)("We cannot say that it is beyond the power of a Legislature, in effecting such a change in common law rules, to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability such as the present, not only upon those at fault but upon those who, although not directly culpable, are able nevertheless, in the management of their affairs, to guard substantially against the evil to be prevented.").

Because an act is negligent does not mean it can't also be reprehensible. See Gore, 517 U.S. at 576 ("[T]rickery and deceit…are *more reprehensible* than negligence." (citation omitted)(emphasis added)).  "Reprehensibility" is simply another word for "culpability."[25] "Reprehensible" conduct can be "open to criticism or rebuke; blameworthy."[26] The goal of the "reprehensibility" guidepost is to ensure that the award reflects "the enormity of [the] offense." Gore, 517 U.S. at 575. "This principle reflects the accepted view that some wrongs are more blameworthy than others." Id.

 "Reprehensibility" requires an evaluation of how blameworthy conduct may be: less culpable conduct such as negligence may be less reprehensible requiring a lower damages award; more culpable conduct such as gross negligence, recklessness, gross recklessness, or intentional actions may be more reprehensible requiring a higher award. See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1065 (11th Cir. 2010)(citing Ala. Power Co. v. Turner, 575 So.2d 551, 554–55 (Ala.1991); ALABAMA PATTERN JURY

---

[25] See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012).

[26] COLLINS ENGLISH DICTIONARY (10th ed. 2010).

INSTRUCTIONS: CIVIL 11A.28 (2d ed.))("In assessing punitive damages [under the Alabama wrongful death statute], the worse the defendant's conduct was, the greater the damages should be.").

This sort of evaluation is no different than what jurors and judges do all the time.[27] Juries evaluate how badly a defendant behaved and award damages accordingly.  See, e.g., ALABAMA PATTERN JURY INSTRUCTIONS: CIVIL 11A.28 (2d ed.). In an analogous area of law—criminal sentencing—judges calculate punishments based on varying degrees of culpability.[28] Just as a street level illegal drug dealer may be considered less culpable than a ringleader, so too could a merely negligent legal drug producer be held less liable than a producer who intentional misrepresents risks about a drug.

### 2.  Proportionality

The defendants next argue that the second Gore guidepost cannot be applied because the wrongful death statute does not provide compensatory damages. Without compensatory damages, they claim, the court would be unable to gauge the reasonableness of the punitive damages based on a ratio of punitive to compensatory damages.

---

[27] See also Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 20 (1991)("The discretion allowed under Alabama law in determining punitive damages is no greater than that pursued in many familiar areas of the law as, for example, deciding 'the best interests of the child,' or 'reasonable care,' or 'due diligence,' or appropriate compensation for pain and suffering or mental anguish. As long as the discretion is exercised within reasonable constraints, due process is satisfied.").

[28] See Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433 (2001)("As in the criminal sentencing context, legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards."); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22 (1991)("The standards provide for a rational relationship in determining whether a particular award is greater than reasonably necessary to punish and deter.").

While it is true that judges are bound to follow sentencing guidelines, they are still asked to make qualitative evaluations as part of the guideline application which are similar to the proportionality analysis.

The Supreme Court has offered the ratio of compensatory damages to punitive damages as an indicium of reasonableness. However, the Court has also repeatedly declined to formulate a "mathematical bright line" ratio for determining whether a particular punitive damages award was "grossly excessive." See Gore, 517 U.S. at 582-83 ("Once again, 'we return to what we said ... in Haslip: 'We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus.'" (citations omitted)).[29]

I cannot say that the absence of a ratio would necessarily render the entire evaluation under the "guideposts" unconstitutional. While the Supreme Court has explained that punitive damages should bear a reasonable relationship to compensatory damages, this relationship is but one factor to consider.[30] Whether a punitive damages award is "grossly excessive" also depends upon many other things: the possible harm that could have resulted from the defendant's conduct, whether the conduct was carried out in

---

[29] See also TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 456-58 (1993)("In the end, then, in determining whether a particular award is so 'grossly excessive' as to violate the Due Process Clause of the Fourteenth Amendment…we return to what we said two Terms ago in Haslip: 'We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.")(citations omitted); Gore, 517 U.S. at 582 ("Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award."); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 434-35 (2001)("We have recognized that the relevant constitutional line is 'inherently imprecise'… rather than one 'marked by a simple mathematical formula'…" (citations omitted)); State Farm, 538 U.S. at 424-25 ("We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.").

[30] See TXO Production Corp., 509 U.S. at 459-60; Cooper Industries, 532 U.S. at 435 ("But in deciding whether that line has been crossed, we have focused on the same general criteria: the degree of the defendant's reprehensibility or culpability…; the relationship between the penalty and the harm to the victim caused by the defendant's actions…; and the sanctions imposed in other cases for comparable misconduct…" (citations omitted)).

bad faith, whether trickery was involved, and how much a defendant might have profited from his conduct.[31]

Even when a ratio can be used, the Supreme Court has explained that it may not always be useful in gauging how culpable a defendant's conduct may be. For example, conduct that is reckless but causes little actual harm may require a substantial punitive damages award to prevent future bad acts. See TXO Production Corp., 509 U.S. at 459-60 ("For instance, a man wildly fires a gun into a crowd. By sheer chance, no one is injured and the only damage is to a $10 pair of glasses. A jury reasonably could find only $10 in compensatory damages, but thousands of dollars in punitive damages to teach a duty of care. We would allow a jury to impose substantial punitive damages in order to discourage future bad acts.")(citations and quotation marks omitted)).[32]

In this case, even if compensatory damages were available, they may not be an effective means for calculating punitive damages. The decedent was not working at the time she died.[33] She was employed for many years, but her health conditions made work increasingly difficult; she left the workforce several years before her death.[34] She was

---

[31] See TXO Production Corp., 509 U.S. at 462 ("The punitive damages award in this case is certainly large, but in light of the amount of money potentially at stake, the bad faith of petitioner, the fact that the scheme employed in this case was part of a larger pattern of fraud, trickery and deceit, and petitioner's wealth, we are not persuaded that the award was so 'grossly excessive' as to be beyond the power of the State to allow.").

[32] See also Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 676-78 (7th Cir. 2003)(explaining when a single-digit ratio may not serve to punish defendant's behavior).

[33] See Plaintiff's Fact Sheet (Doc. No. 49-8, Ex. G.).

[34] Id.

unmarried and living with her sister.[35] She had no dependents. A superficial overview of the facts makes clear: she would be entitled to little or no compensatory damages.[36]

Assuming that the plaintiff has a valid wrongful death claim, she would only be able to recover some single-digit multiple of a small compensatory damages award, under the defendants' theory. She essentially would only be entitled to a small punitive damages award. Yet, if Ms. Hayes had died several years earlier, when she was working, she might be entitled to more punitive damages simply because her compensatory damages would be higher. Under either scenario, the defendants' conduct could have been the same. What the plaintiff's life circumstances are at the time she died should not drastically alter what punitive damages may be available, to prevent future deaths like hers. The defendants' conduct is the focus of a punitive damages analysis, not the plaintiff's.

This is exactly why Alabama has set its statute up in the way it has. It recognizes that one tort victim's life should not be valued any more than another victim's life when both were subject to the same conduct by a tortfeasor. There is an inherent unfairness to claiming one person's life is worth more than another. This principle is especially

---

[35] See R. Hayes Dep. at 191 (Doc. No. 49-10, Ex. J and Doc. No. 95, Ex. 1).

[36] Comparing this potential outcome to that of a prior analogous action further makes the point. In Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378 (4th Cir. 1995), Anthony Benedi, a former special assistant to President George H.W. Bush, suffered severe liver damage after taking Extra Strength Tylenol with alcohol. Id. at 1381. See Associated Press, Tylenol User Wins $8.8 Million From Lawsuit Over Liver Failure, Los Angeles Times, Oct. 21, 1994, available at http://articles.latimes.com/1994-10-21/news/mn-53051_1_tylenol-products. As a result, his liver and kidney failed almost to the point of death. Id. At that time, Tylenol did not contain warnings about the effects of its use with alcohol. Benedi brought suit against the makers of Tylenol claiming that the product did not warn of the risks of taking Extra Strength Tylenol with alcohol. Id. at 1382. Benedi was awarded $7,850,000 in compensatory damages and $1,000,000 in punitive damages. Id. To say that Ms. Hayes can recover substantially less punitive damages simply because she had a different job, educational background, etc. when she could have actually died as a result of the defendants' conduct would be illogical.

important in this context. Those taking Extra Strength Tylenol for extended periods may

be the ill, the elderly, the disabled, the vulnerable. Under our traditional measure of

compensatory damages, these also may be the same people whose lives may be

considered "less valuable." To say that the defendants' conduct should be any less

punishable because it caused harm to someone more vulnerable seems illogical and goes

against the goals of punitive damage awards.[37]

### e.  The Alabama Wrongful Death Statute Is Not Facially Unconstitutional

Punitive damage decisions require case-by-case analysis. "In our federal system,

States necessarily have considerable flexibility in determining the level of punitive

damages that they will allow in different classes of cases and in any particular case."

BMW of N. Am. v. Gore, 517 U.S. 559, 568 (1996). "[A] jury imposing a punitive

damages award must make a qualitative assessment based on a host of facts and

circumstances unique to the particular case before it." TXO Production Corp. v. Alliance

Resources Corp., 509 U.S. 443, 457 (1993). Whether a punitive damages award can be

considered violative of due process can only be established through actual application of

a punitive damages scheme. See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,

532 U.S. 424, 436 (2001)(recognizing that "gross excessiveness" is a "fluid concept[]"

which takes its "substantive content from the particular contexts in which the standard are

being expressed; that because such concepts acquire content only through case-by-case

application, independent review is necessary"). Like other concepts that are punitive in

---

[37] See BMW v. Gore, 517 U.S. 559, 567 (1996)(explaining how targeting the financially vulnerable in the context of economic injuries would be more reprehensible and warranting of higher punitives); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)(same).

nature—"reasonable suspicion" and "probable cause"—a determination of whether a

punitive damages award is unconstitutional can only be done "as applied."

The Alabama Supreme Court has recognized that a ratio factor cannot be applied

to wrongful death awards because the statute does not provide for compensatory

damages.[38] The court has explained "one could say that it does not apply as a

mathematical ratio, but, if one considers the purpose behind this factor, it applies in the

sense of proportionality between the punitive-damages award and the harm that was

caused or was likely to be caused by the defendants' conduct." Tillis Trucking Co., Inc. v.

Moses, 748 So.2d 874, 889 (Ala. 1999). "[A] punitive-damages award in a wrongful-

death case may nonetheless be compared and evaluated, though perhaps not in a strictly

mathematical sense, by means of a 'proportional evaluation' of the awarded amount, the

conduct of a defendant, and the resulting harm from that conduct."[39] Boudreaux v.

Pettaway, 108 So.3d 486, 499 (Ala. 2012).[40]

---

[38] See Cherokee Elec. Co-op. v. Cochran, 706 So.2d 1188, 1194 (Ala. 1997)("Alabama law allows no compensatory damages in a wrongful death case. This factor, therefore, does not apply here."); Lance, Inc. v. Ramanauskas, 731 So. 2d 1204, 1218 (Ala. 1999)("Because Alabama law does not allow the recovery of compensatory damages in a wrongful death case, this factor is not applicable. Until the legislature amends the wrongful-death statute to allow compensatory damages for economic loss or allows recovery for mental anguish as part of punitive damages, our task in assessing the appropriate punitive damages in a wrongful-death case will remain extremely difficult."); Boudreaux v. Pettaway, 108 So.3d 486, 498-99 (Ala. 2012)("Because Alabama's wrongful-death statute provides for only punitive damages, Alabama courts are unable to apply formulaically the pertinent Gore guidepost in examining the reasonableness of a punitive-damages award by comparing it to the compensatory-damages award.").

See also Exxon Shipping Co. v. Baker, 554 U.S. 471, 491-92 (2008)(explaining how one of the original historical justifications for punitive damages was "the need 'to compensate for intangible injuries, compensation which was not otherwise available under the narrow exception of compensatory damages prevalent at the time.'" (quoting Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 437-38, n. 11 (2001)).

[39] The defendants argue that this approach is flawed because "[i]t requires the court alone to determine, as a matter of fact, the harm suffered by the plaintiff, since the jury is forbidden even to consider that question." Defendants' Motion, Doc. No. 47 at 16. The defendants claim that this would contradict the Supreme Court's determination in Cooper Industries that "actual damages suffered" is a question of fact for the jury. See 532 U.S. 424, 437 (2001). The defendants describe this "actual harm" as "the actual value of [the plaintiff's] life." The defendants imply that this would violate the Seventh Amendment. Under the wrongful death statute, the jury is not allowed to find this fact

Given the "full panoply of procedural protections" provided on post-verdict review with the additional <u>Gore</u> guideposts, I cannot say that there is "no set of circumstances … under which the Act would be valid" under the Due Process Clause.[41] <u>Heffner v. Murphy</u>, 745 F.3d 56, 65 (3d Cir. 2014)(citation and quotation mark omitted). The Alabama wrongful death act is not facially unconstitutional.[42]

---

because a human life cannot be measured in dollars. <u>See Roe</u>, 613 F.3d at 1065-66; <u>Atkins v. Lee</u>, 603 So. 2d 937, 942 (Ala. 1992)("Thus, in argument counsel must distinguish between the value of human life in general, as opposed to the value of a *particular* life—a distinction that is not always easy to articulate."); <u>Estes Health Care Ctrs., Inc. v. Bannerman</u>, 411 So. 2d 109, 113 (Ala. 1982)("The judicial interpretations of our wrongful death statute have developed this principle: While human life is incapable of translation into a compensatory measurement, the amount of an award of punitive damages may be measured by the gravity of the wrong done, the punishment called for by the act of the wrongdoer, and the need to deter similar wrongs in order to preserve human life."); Randall, *supra*, 60 ALA. L. REV. at 982. This, of course, relies on an assumption and a hypothetical. An argument of this type is better made on an "as-applied" constitutional challenge, when it is much clearer whether the judge has in fact invaded the territory of the jury.

[40] In <u>Boudreaux v. Pettaway</u>, the defendant argued that damages awarded under the wrongful death statute were unconstitutional because they did not comply with <u>Gore</u>'s directives on providing due process. 108 So.3d 486, 496-99 (Ala. 2012). Relying on <u>Tillis Trucking</u>, <u>Boudreaux</u> again rejected the argument that the award was unconstitutional because the award was subject to a "proportionality review" by the court in determining if the award was proportionate to the conduct of the defendant and resulting harm. <u>Id.</u> at 499.

[41] The defendants argued during oral argument that <u>Gore</u> requires juries to use the guideposts to determine the appropriate punitive damages award. I do not read <u>Gore</u> as going that far. As the Supreme Court explained in <u>State Farm</u>, the application of the guideposts is a legal inquiry within the purview of the court, not a factual inquiry for the jury. "We reiterated the importance of these three guideposts in <u>Cooper Industries</u> and mandated appellate courts to conduct de novo review of a *trial court's application of them to the jury's award*." 538 U.S. 408, 418 (citing <u>Cooper Industries</u>, 532 U.S. 524)(emphasis added). I do not find this argument persuasive.

[42] The defendants implicitly argue that the punitive damages under the Alabama wrongful death statute are unconstitutional because they are uncapped. It is true that a jury's wide discretion in imposing punitive damages does risk a violation of constitutional due process. <u>See Haslip</u>, 499 U.S. at 18 (noting concern for "punitive damages run wild"). However, "[a] basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003). <u>See also</u> <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 506 (2008)(discussing the flaws of having a hard cap on punitive damages).

When a statute does not impose a cap on punitive damages, the method for determining punitive damages is considered to be "common law." <u>See Haslip</u>, 499 U.S. at 10 ("Without statutory (or at least common-law) standards for the determination of how large an award of punitive damages is appropriate in a given case, juries are left largely to themselves in making this important, and potentially devastating, decision...."). "Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable." <u>Id.</u> at 15.

## V.    CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment on the plaintiff's claim for punitive damages under the Alabama Wrongful Death Act (Doc. No. 47) is denied.

An appropriate Order follows.

---

As the Supreme Court explained in Haslip, "the common-law method for assessing punitive damages is [not] so inherently unfair as to deny due process and be *per se* unconstitutional. 'If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it.'" Id. at 17. See also TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 457 (1993)("Punitive damage awards reached using 'fair procedures'—decisions made using an impartial collective deliberation process—are 'entitled to a strong presumption of validity.'"). "In view of this consistent history, we cannot say that the commonlaw method for assessing punitive damages is so inherently unfair as to deny due process and be per se unconstitutional. 'If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it.'" Haslip, 499 U.S. at 17 (citations omitted). Under Haslip, this argument holds little weight.