# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: TYLENOL (ACETAMINOPHEN) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § § | MDL NO. 2436<br><br>2:13-md-02436<br><br>HON. LAWRENCE F. STENGEL |

This Document Relates to:

Civil Action No. 2:12-cv-07263

| | |
|---|---|
| Rana Terry, as Personal Representative and Administrator of the Estate of Denice Hayes, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>McNEIL-PPC, Inc., McNeil Consumer Healthcare, and Johnson & Johnson, Inc.,<br><br>Defendants. | § § § § § § § § § § § § |

# M E M O R A N D U M

**Stengel, J.**                                                                 **June 3, 2016**

This case is part of a Multidistrict Litigation (MDL) involving claims of liver

damage from the use of Tylenol at or just above the recommended dosage.[1] This is the

---

[1] See Master Compl., 13-md-2436, Doc. No. 32. There are over two hundred other cases included in this MDL, along with several similar cases in New Jersey state court.

first "bellwether" scheduled for trial.[2] The plaintiff has filed fifteen motions in limine. My rulings on each motion are explained below.

## I.        Evidentiary Standards

Several of the plaintiff's motions in limine involve arguments about relevancy or the prejudicial effect of certain evidence under Federal Rules of Evidence 401 and 403. "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." Sprint v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting U.S. v. Abel, 469 U.S. 45, 54 (1984)). See also Moyer v. United Dominion Indus., 473 F.3d 532, 542 (3d Cir. 2007)(citation omitted). "Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403...." Id.

Context is important to questions involving Rules 401 and 403. Luce v. U.S., 469 U.S. 38, 41 (1984)("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context."). To be admissible, evidence must be relevant. FED. R. EVID. 402. Relevant evidence is evidence having any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. FED. R. EVID. 401.

---

[2] A "bellwether" case is a test case. "Bellwether" trials should produce representative verdicts and settlements.  The parties can use these verdicts and settlements to gauge the strength of the common MDL claims to determine if a global resolution of the MDL is possible. See FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH EDITION 360 (2004); DUKE LAW CENTER FOR JUDICIAL STUDIES, MDL STANDARDS AND BEST PRACTICES 16-21 (2014).

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

### A. Plaintiff's Motion in Limine to Preclude Gratuitous Reference to the Fact that Plaintiff is from Out of State (MIL A)

The plaintiff has moved to "preclude Defendants from referring in any way to the fact that she resides in a jurisdiction outside of the Eastern District of Pennsylvania," specifically during opening and closing statements. The plaintiff is concerned that the defendants may imply that the plaintiff is a "carpetbagger" who is trying to gain an advantage by bringing her suit in this district.

In response, the defendants agree that they will not intentionally "cast [the] Plaintiff in any negative light merely because she sought to bring suit in Pennsylvania and that the case was removed to the Eastern District of Pennsylvania" or "make inappropriate insinuations regarding Plaintiff's residence."

I see no prejudice in offering facts about the plaintiff's and decedent's home state. This information may well be relevant to the jury's understanding of the case. Given that the defendants concede they will not inappropriately argue or insinuate any negative connotation regarding the plaintiff's out-of-state status, I will **DENY** this motion **without prejudice**. If the defendants make arguments casting the plaintiff's out-of-state status in a prejudicial light, the plaintiff may raise an objection at trial.

3

**B.  Plaintiff's Motion in Limine to Exclude Any Evidence, Argument, or Inference Pertaining to Any Settlement Negotiations Offered or Demanded Prior To or During Trial (MIL B)**

The plaintiff moves for the exclusion of any evidence, argument, or inference pertaining to any settlement negotiations between the parties before or during trial. Federal Rule of Evidence 408 prohibits the admission of such evidence in order to encourage settlement and compromise. See, e.g., Trout v. Milton S. Hershey Med. Ctr., 572 F. Supp. 2d 591, 599 (M.D. Pa. 2008)("Rule 408 embraces a strong public policy favoring settlement. Under this policy, federal courts frequently exclude evidence of settlements reached between a plaintiff and a former defendant or between a plaintiff and a non-defendant who is responsible for a portion of plaintiff's damages."); Young v. Verson Allsteel Press Co., 539 F.Supp. 193, 196 (E.D. Pa.1982).

The defendants agree that such evidence should be excluded under Fed. R. Evid. 408. Their only argument is that both parties, not just the defendants, should be precluded from admitting such evidence under Rule 408. I agree.

Rule 408 applies equally to both parties. While Rule 408 bars a defendant from introducing evidence that the plaintiff was willing to settle her claim as proof of the invalidity of the claim, it also bars a plaintiff from introducing evidence of a defendant's engagement in settlement discussions as proof of liability.  See Key Pharms., Inc. v. ESI-Lederle, Inc., No. CIV. A. 96–1219, 1997 WL 560131, at *3 (E.D. Pa. Aug. 29, 1997)(compromise evidence inadmissible to prove invalidity of plaintiff's claims); Herman v. City of Allentown, 985 F. Supp. 569, 577 (E.D. Pa. 1997)("Without Rule 408, the defendant's offer to settle could be parlayed into proof of liability which would

4

discourage the defendant from ever even considering settling the case."); Weinstein's

Federal Evidence § 7.05 ("It is clear that Rule 408 includes offers both by the person

against whom the claim is asserted and by the person asserting the claim."); FED. R.

EVID. 408, Advisory Committee Notes (explaining that parties may have many varied

reasons for settling which do not necessarily relate to validity of claim or admission of

liability).

I will **GRANT** the plaintiff's motion as to both parties. Evidence, argument, or

inference pertaining to any settlement negotiations before or during trial shall not be

admitted, as explained in Fed. R. Evid. 408. However, arguments about exceptions

contained in Fed. R. Evid 408 remain available to the parties.[3]

### C. Plaintiff's Motion in Limine to Preclude Defendants from Engaging in Certain Pretrial Advertisement or Otherwise Engaging in Reputation Publicity (MIL C)

The plaintiff moves to prevent the defendants from engaging in new marketing,

advertising, or publicity campaigns pre-trial regarding their reputation. The plaintiff

argues such campaigns could taint a jury pool. The defendants counter that they "do not

---

[3] Federal Rule of Evidence 408: Compromise Offers and Negotiations states:

(a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
  (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

  (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408.

intend to engage in any advertising campaign specifically designed to influence jurors or relating to this case" but do plan to "continue their normal business operations, which may include advertising and marketing of its products."

The plaintiff's request is somewhat unprecedented—to ask a civil defendant to restrain from engaging in certain marketing tactics pre-trial.  "Problems caused by prejudicial pretrial publicity typically arise in the criminal context." Koch v. Koch Industries, Inc., 2 F. Supp. 2d 1409, 1412 (D. Kan. 1998). See also Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979)("[A]dverse publicity can endanger the ability of a defendant to receive a fair trial [in a criminal trial]."). However, "[t]he Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context." Bailey v. Systems Innovation, Inc., 852 F.2d 93, 97-98 (3d Cir. 1988)(citations omitted). Pretrial publicity could affect the fairness of a civil trial by tainting the jury pool and process. See Koch, 2 F. Supp. at 1412.

A prior restraint is "one of the most extraordinary remedies known to our jurisprudence." Neb. Press Ass'n v. Stuart, 427 U.S. 539, 562 (1976). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Id. at 559.

Before a court can impose a pre-trial restraint on a party's speech rights, the court must consider: a) the nature and extent of the speech being restrained; 2) whether other means can mitigate the effects of unrestrained pre-trial speech; and 3) how effectively a restraining order would operate to prevent the threatened danger of an unfair trial. Id. at

562. See also Bailey, 852 F.2d at 99 (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 562 (1976)).

There is no reason to impose restraints on the defendants' speech rights at this time. The defendants claim they do not plan to engage in pretrial advertising or publicity to bolster their reputation. As the defendants point out, the extent and nature of the unfair publicity the plaintiff wishes to have restrained is vague and unclear. Though the plaintiff claims her request is narrowly tailored because it limits the plaintiff to "the time preceding and during trials" and "in the limited market," these limitations are not well-defined. They also could impose an undue burden on the defendants' speech rights when other means are available to mitigate juror bias. See Koch, 2 F. Supp. at 1413 ("Less restrictive alternatives to an injunction against speech include such possibilities as a change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors." (citation omitted)).

I will **DENY** plaintiff's motion in limine C **without prejudice.**

### D. Plaintiff's Motion in Limine to Exclude Evidence Relating to the Personal Use of Tylenol by any Plaintiff and Defendant Employee Witness, Expert Witness, and/or Their Family Members (MIL D)

The plaintiff moves for the exclusion of any evidence, testimony, comment, inference, or document related to personal use of Tylenol by any McNeil or Johnson & Johnson employee, witness, expert witness, and/or their family members. This exclusion would apply to both defense and plaintiff's witnesses. The plaintiff argues the evidence is not relevant under Fed. R. Evid 401 or, if it is relevant, its probative value is substantially outweighed by the prejudice it may cause under Fed. R. Evid. 403. Allowing testimony

that the defendants' employees took Extra Strength Tylenol, the plaintiff argues, would be highly prejudicial. See Humeston, et al v. Merck & Co., Inc., ATL-L-2272-03-MT, Order (N.J. Law Div. Sept. 2, 2005) (Doc. No. 55, Ex. 1)(excluding evidence of Merck employees' taking drug at issue because would be highly prejudicial to plaintiff's claims).

The plaintiff claims that her experts were asked during their depositions if they took Tylenol to treat personal ailments. The plaintiff argues this information is not relevant to the issues of the case. In the least, the defendants argue, this evidence should be permitted on cross-examination to show inconsistent statements, bias, or the like. For example, a plaintiff's expert who still takes Tylenol, despite testifying to its defectiveness, could be biased based on the fact they were paid to provide expert testimony.

The defendants claim they do not plan to elicit testimony from their own witnesses about personal use, unless the plaintiff "opens the door" to such testimony. The defendants argue this information would be relevant because the plaintiff's theory is that the defendants intentionally concealed risks related to the safety of Extra Strength Tylenol. The defendants claim they should be able to rebut this theory by offering evidence that senior executives making the decision regarding Tylenol considered it to be safe enough to take or give to their families. They further argue that a jury could infer the defendants' executives had no such intent to defraud or conceal because they took the product, believing it was safe. Since the Alabama wrongful death statute only allows for

punitive damages, the jury will need to understand the extent to which the defendants intended to harm the general public in order to appropriately award damages, they argue.

I will **GRANT** the plaintiff's motion **in part and DENY it in part**. Testimony by employees of the defendants about whether they personally take Tylenol is of little relevance to this case. However, the prejudice that such testimony may cause substantially outweighs any probative value it may have. See In re Yasmin, 3:09-cv-10012-DRH-PMF (3:09-md-2100-DRH-MDL 2100), Doc. No. 262 at 61-62 (Phila. Ct. Cmn. Pleas., Mass Torts Div. Dec. 22, 2011)(Doc. No. 55, Ex. 2, 3)(excluding testimony by Bayer employees that they took Yaz because testimony was irrelevant and/or any probative value would be substantially outweighed by the prejudice of hearing employees who were loyal to the company offer benefits, while plaintiff could not rebut with testimony of consumers who did not take product because of risks); McCarrell v. Hoffman-LaRoche, Inc. and Roche Labs., Inc., ATL-L-1951-03-MT, (N.J. Law Div. Apr. 17, 2007)(Higbee, J.)(excluding evidence that witnesses, experts, or plaintiff's family/friends personally used Accutane because would be "more prejudicial than probative").

Testimony about use of Tylenol by the plaintiff's witnesses may be relevant to the plaintiff's case. For example, Rebecca Hayes lived with Denice Hayes, the decedent. Allegedly, she shared a bottle of Extra Strength Tylenol with her sister. She also purchased this bottle for them both. This information is relevant to causation and possibly other elements of the plaintiff's claims. It could be highly probative with no discernible prejudice.

Evidence of experts' personal use of Tylenol could be relevant on cross examination on the issue of credibility at least. Any Rule 403 arguments can be raised at trial.

### E.  Plaintiff's Motion in Limine to Strike Certain Deposition Testimony of AASLD Witness Sherrie Cathcart (MIL E)

The plaintiff's moves to strike certain testimony in the deposition transcript of Sherrie Cathcart, the corporate designee for the American Association for the Study of Liver Disease (AASLD). Specifically, the plaintiff argues that questions asked of Ms. Cathcart were beyond the scope of her role as corporate designee and background as an administrator. This motion is better addressed during deposition designations. I will defer ruling on these arguments and this motion until that time.

### F.  Plaintiff's Omnibus Motion in Limine to Exclude Subjects of Evidence at Trial (MIL F)

The plaintiff makes a single motion to limit the scope of subjects which can be discussed at trial:

#### a.  *Any Comment, Evidence, Testimony, Inference, or Document That a Verdict for the Plaintiff Will Adversely Impact Pharmaceutical Companies' Incentive/Ability to Develop New Medications*

On its face, this sort of evidence would likely be irrelevant or unduly prejudicial as compared to its probative value. However, the context of this evidence is important. The defendants argue that they do not plan to introduce this sort of evidence, essentially mooting the need for this item. For these reasons, I will **DENY** this request **without prejudice.** If the defendants offer evidence to this effect, the plaintiff can raise this objection at trial.

> **b. Any Comment, Evidence, Testimony, Inference, or Documents Tending to Suggest in any way that any Award of Damages in this Case will Adversely Affect the Ability of any Member of the Jury to Purchase or have Available Medications in the Future, or Affect the Cost Thereof, or have any Adverse Effect on the Medical or Health Products Available to Individuals or Industries in the United States or Worldwide**

On its face, this sort of evidence would likely be irrelevant or unduly prejudicial as compared to its probative value. However, the context of this evidence is important. The defendants argue that they do not plan to introduce this sort of evidence, essentially mooting the need for this item. For these reasons, I will **DENY** this request **without prejudice**. If the defendants offer evidence to this effect, the plaintiff can raise this objection at trial.

> **c. Any Comment, Evidence, Testimony, Inference, Document, or Reference to the Fact that this Case or Other Tylenol Product Liability Litigation may have a Negative Impact on the Stock Value of Defendants or any other Publicly Traded Pharmaceutical Manufacturer**

On its face, this sort of evidence would likely be irrelevant or unduly prejudicial as compared to its probative value. However, the context of this evidence is important. The defendants argue that they do not plan to introduce this sort of evidence, essentially mooting the need for this item. For these reasons, I will **DENY** this request **without prejudice**. If the defendants offer evidence to this effect, the plaintiff can raise this objection at trial.

> **d. Any Comment, Evidence, Testimony, or Inference that a Verdict for the Plaintiff Will or Could Result in People Losing Their Jobs or Lead to Lay-Offs**

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants argue that they do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

> **e.   *Any Comment, Evidence, Testimony, Inference, Document, or Reference about how, when, or under what Circumstances Plaintiff Chose or Employed any of her Attorneys***

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants argue that the plaintiff's credibility may be called into question by evidence that her attorneys in this action are different from the attorney hired to handle the accidental death insurance claim for Denice's estate. The plaintiff's choice of attorneys has nothing to do with credibility or with any substantive issue in this case. A separate motion in limine addresses the extent to which information regarding the accidental insurance claim is admissible.

The fact that Denice's estate filed a claim for and received accidental death insurance benefits is of little relevance to this case. The receipt of accidental death insurance benefits or the amount of such benefit is of little relevance here. Admission or statements made during the process of applying for accidental death insurance benefits may be of some relevance. The choice of attorney to handle such a claim is of no relevance. For these reasons, I will **GRANT** the plaintiff's motion as to this evidence.

> **f.   *Any Comment, Inference, Evidence, Testimony, or Document Tending to Suggest or in any way Reflect the Financial Status or Resources of any of Plaintiff's Attorneys or their Law Firms, or any of those Attorneys' Other Business or Cases***

The plaintiff argues that information about plaintiff's counsel's resources is irrelevant to the case. The defendants argue this evidence should be allowed if the plaintiff plans to offer evidence that the defendants are "very wealthy companies," they should be allowed to offer the same type of evidence for the plaintiff. A law firm's resources, or the combined resources of several law firms, are irrelevant to any issue in this case. A separate motion in limine discusses whether the defendants' financial information is admissible.

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. I will **GRANT** the plaintiff's motion as to this evidence.

### g. Any Comment, Inference, Evidence, Testimony, or Document Relating to Travel by Private Jet for any of the Lawyers or Witnesses Involved in this Case

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants note that they do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

### h. Any Indication that Defendants may have to pay a Judgment Entered in this Case, that Defendants may have Limited Policy Limits or Cash, or the Effect or Results of Such Judgment upon the Insurance Rates, Premiums, Finances, or Ability of Defendants to Compete in the Marketplace

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants argue that they do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

***i.   Any Suggestion that any Recovery the Plaintiff may Receive in this Case in the way of Damages Awarded by a Jury Verdict, may be Subject to Prejudgment Interest or Judgment Interest***

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

***j.   Any Comment, Inference, Evidence, Testimony, or Document Tending to Suggest in any way that an Award of Punitive Damages in this Case is Unconstitutional, Illegal, or Not Supported by the Current State of the Law***

I have already ruled that the Alabama Wrongful Death Act is not unconstitutional on its face. Any comment or argument suggesting the contrary would be irrelevant and/or unduly prejudicial. The defendants concede that they do not plan to make such argument. I will **GRANT** the plaintiff's motion as to this evidence.

***k.   Any Mention of the Purported "Litigation Crisis," "Lawsuit Crisis," "Lawsuit Abuse," "Lawyer Driven Litigation," or Similar Terms or Phrases***

This evidence is irrelevant to the issues of this case and would be unduly prejudicial. The defendants do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

***l.   Any Comment, Evidence, Testimony, or Inference about Mass Torts Made Perfect, American Association for Justice, The Reptile, Jerry Spence Trial College or any other Books, Seminars, and Educational Materials for Plaintiff's Attorneys***

This evidence would be irrelevant. The defendants represent that they do not plan to introduce this sort of evidence, essentially mooting the need for this item. For these reasons, I will **GRANT** this request.

> ### m. Any Comment, Evidence, Testimony, or Inference about the Plaintiff's Fee Agreement and who is Paying Expenses or who is Responsible for Expenses in Connection with this Litigation

On its face, this sort of evidence could be irrelevant or unduly prejudicial as compared to its probative value. However, this request is vague, and the court is left to wonder what the plaintiff wants to exclude. The fee agreement or an understanding about who will pay the expenses of the lawsuit is of no consequence to any substantive issue in this case. The amount of compensation paid to experts is relevant to an expert witness' credibility. I will **DENY** this request **without prejudice**. If the defendants offer evidence to this effect, the plaintiff can raise this objection at trial.

> ### n. Any mention or disclosure, whether directly or indirectly, in any manner, that Plaintiff is covered by some form of insurance for the incident in question

The defendant argues that this motion should be denied because Alabama law permits a defendant to introduce evidence that the plaintiff's medical expenses have been or will be reimbursed by a collateral source. See Ala. Code § 6-5-522.[4] It is true the

---

[4] Ala. Code § 6-5-522: Evidence of medical expense reimbursement mitigates damages; cost of obtaining reimbursement recoverable states:

> In all product liability actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed (1) by medical or hospital insurance, or (2) pursuant to the medical and hospital payment provisions of law governing workmen's compensation, shall be admissible as competent evidence in mitigation of such medical or hospital expense damages. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the

collateral source rule does not necessarily apply to medical expense reimbursements. However, I do not see how that exception to the collateral source rule applies in this case. Under the Alabama wrongful death statute, the jury can only award punitive damages, not compensatory damages. What medical expense reimbursements were paid would be relevant to compensatory damages—to show mitigation of damages. See, e.g., Mobile Infirmary Med. Ctr. v. Hodgen, 884 So. 2d 801, 806 (Ala. 2003)(explaining how medical reimbursements related to determination of compensatory damages); Hammond v. McDonough Power Equip., Inc., 436 So. 2d 842, 843 (Ala. 1983)("The legislature made clear its intent in adopting [Ala. Code § 6-5-522] in § 6-5-520: 'It is the intent of the legislature that plaintiffs be compensated fully for any medical or hospital expenses incurred as a result of injuries sustained from a breach of product liability laws, but that plaintiffs not receive compensation more than once for the same medical and hospital expenses.'").[5] Here, we are only concerned with punitive damages for wrongful death. Evidence about medical expense reimbursement would not be relevant to this case.

    For this reason, I will **GRANT** the plaintiff's request on this item. If the defendants plan to offer evidence from an insurance claim for another reason, they may

---

cost of obtaining reimbursement or payment of medical or hospital expenses. Such portion of the costs of obtaining reimbursement or payment of medical or hospital expenses as the trier of fact finds is reasonably related to the reimbursement or payment received or to be received by the plaintiff shall be a recoverable item of such damages for medical or hospital expenses.

Ala. Code § 6-5-522 (1975). This carve-out specifically pertains to medical or hospital expenses covered by insurance, not expenses covered by other types of insurance.

[5] The defendants also cited Marsh v. Green, 782 So. 2d 223, 230 (Ala. 2000), for this argument. While Marsh discussed admissibility of medical reimbursements, it did so in the context of medical malpractice cases which involve Ala. Code § 6-5-545, not Ala. Code § 6-5-522. That case is not helpful.

raise the issue with the court. I will rule on the relevance of that evidence and conduct a

Rule 403 analysis at that time.

> **o.  Any Comment, Evidence, Testimony, Inference, or Document
> Mentioning, Suggesting, or Inferring that if Defendants are made to pay
> a Judgment, it may Negatively Affect the New Jersey Economy or the
> Economy of any State**

This evidence is irrelevant to the issues of this case and would be unduly

prejudicial. The defendants do not plan to introduce this sort of evidence. I will **GRANT**

the plaintiff's motion as to this evidence.

> **p.  Any Comment, Evidence, Testimony, Inference, or Document that
> Bolsters the Unchallenged Character (i.e., Honest) or Traits (i.e.,
> Generous) of the Defendants' Current or Former Employees, Managers,
> Consultants, Experts, Agents, or Fiduciaries Preemptively**

The unchallenged character of the defendants' current or former employees is not

relevant to their case-in-chief. I will **GRANT** this request for evidence regarding

unchallenged character or character evidence offered preemptively. However, the

defendants are entitled to present such evidence if the character/traits of one of the

abovementioned witnesses are attacked by the plaintiff at trial. See FED. R. EVID. 608 ("A

witness's credibility may be attacked or supported by testimony about the witness's

reputation or having a character for  truthfulness or untruthfulness, or by testimony in the

form of an opinion about that character.").

> **q.  Any Comment, Evidence, Testimony, Inference, or Document
> Concerning Societal Good the Defendants Perform by Manufacturing
> Other Drugs or Products**

Evidence about the benefits of other drugs and products would be irrelevant to the issues of this case. The defendants do not plan to introduce this sort of evidence. I will **GRANT** the plaintiff's motion as to this evidence.

> ### r. Any Comment, Evidence, Testimony, Inference, or Document Mentioning that State Warning Defect or Failure-to-Warn Laws Pressure Drug Manufacturers to add Unsubstantiated, False, or Invalid Warnings in order to Avoid Lawsuits

It is unclear what exactly the plaintiff would like precluded under this request. The plaintiff cites to <u>Wyeth v. Levine</u>, 555 U.S. 555, 578-79 (2009). As I explained in my decisions regarding the defendants' motions for summary judgment on the plaintiff's failure-to-warn and design defect claims, state products liability claims are not preempted by federal law, as explained in <u>Wyeth</u>. I would expect the defendants would not make arguments that would counter Supreme Court precedent and my rulings in this case.

Given that it is unclear what evidence would be precluded by this request, I will **DENY** it **without prejudice**. The plaintiff can raise any objections to the admission of evidence based on my previous rulings and <u>Wyeth</u> at trial.

> ### s. Any Comment, Evidence, Testimony, Inference, or Document Mentioning that State Tort Law Undercuts the FDA's Mission to Provide Only Scientifically Valid Warnings

This argument or admission of such evidence would not be appropriate under <u>Wyeth v. Levine</u>, 555 U.S. 555 (2009). As explained in <u>Wyeth</u>, state tort law is meant to complement FDA regulations, not undercut them. I will **GRANT** this request.

> ### t. Any Comment, Evidence, Testimony, Inference, or Document Mentioning that too many Warnings of Serious Injuries will Dilute the Effectiveness of Warnings, Generally

This evidence may be relevant to the case. See Hogan v. Novartis Pharma. Corp., No. 06 Civ. 0260(BMC)(RER), 2011 WL 1533467, *14 (E.D. N.Y. Apr. 24, 2011)(denying similar motion because it "goes to the heart of the case"); Mazda Motor of Am., Inc. v. Rogowski, 105 Md. App. 318, 331 (1995)("The most significant social cost generated by requiring distributors to warn against remote risks is the reduced effectiveness of potentially helpful warnings directed towards risks which are not remote."). I will **DENY** this request **without prejudice**. The plaintiff may raise any arguments about the admissibility of such evidence at trial.

> **u.  *Any Statements, Comments, Inference, Testimony, or Documents Tending to Show that Compliance with FDA Regulations Absolves Defendants of Liability***

The context of this evidence will be important. Compliance with FDA standards is not necessarily an absolute defense because those standards typically provide a floor, not a ceiling.  See, e.g., Wyeth v. Levine, 555 U.S. 555, 573-81 (2009); Elliot v. Brunswick Corp., 903 F.2d 1505, 1508 (11th Cir. 1990)(explaining how compliance is not an absolute defense to design defect claim);  General Motors Corp. v. Edwards, 482 So. 2d 1176, 1198 (Ala. 1985)(overruled on other grounds)(same). However, compliance on certain issues (i.e., whether the defendants included required warnings on their labels) can offer evidence of intent or rebut allegations of breach of duty. I will **DENY** this request **without prejudice**. The plaintiff may raise any arguments about the admissibility of such evidence at trial.

> ### v. *Defendants Should be Prohibited from Alleging that Plaintiffs want Tylenol Removed from the Market*

The plaintiff has, in fact, argued that removal of Extra Strength Tylenol from over-the-counter status would have been one feasible design alternative. If the plaintiff makes this argument, the defendants should not be precluded from discussing the same evidence. The context of this evidence will be important. I will **DENY** this request **without prejudice**. The plaintiff may raise any arguments about the admissibility of such evidence at trial.

> ### w. *Evidence of Defendants' Reputation and Good Acts*

What this information would include and how it would be used is vague and unclear. The context of this evidence will be important. I will **DENY** this request **without prejudice**.

### G. Plaintiff's Motion in Limine to Exclude the Presentation of Defendants' Deposition Designations and Counter-Designations During Plaintiff's Case-in-Chief (MIL G)

This motion relates to the parties' deposition designations, which will be handled at a later time. The defendants will be permitted to offer cross examination of the plaintiff's witness during the plaintiff's case-in-chief. All other types of testimony or designations will be considered when deposition designations are submitted.

### H. Plaintiff's Motion In Limine Regarding Certain FDA Issues (MIL H)

The plaintiff moves for the exclusion of argument, inference, or suggestion by the defendants:  1) that McNeil could not have enhanced the warnings and directions for Extra Strength Tylenol prior to Ms. Hayes' death in August 2010; and 2) that Extra

Strength Tylenol has been approved by the FDA as generally recognized as safe and effective (GRASE).

I previously determined that the plaintiff's claims were not preempted by federal law.[6] I explained that federal law did not prohibit McNeil from enhancing its warnings or directions for Extra Strength Tylenol under Wyeth v. Levine, 555 U.S. 555 (2009), and Mut. Pharm. Co., Inc. v. Bartlett, – U.S. –, 133 S. Ct. 2466 (2013). I also explained that the Food and Drug Administration (FDA) classified acetaminophen as GRASE but never fully approved it as GRASE because the FDA never issued a Final Monograph.[7]

For these reasons, any argument by the defendants that would contradict my previous rulings would not be permissible. I will **GRANT** the plaintiff's motion.

## I. Plaintiff's Motion in Limine Regarding Highly Confidential Document De-designation (MIL I)

The plaintiff moves to de-designate certain highly confidential information. Most of this information relates to the defendants' research and development of an acetaminophen alternative, which would not cause liver injury. This R & D project is called Project PAPA. In response, the defendants filed a separate motion in limine to

---

[6] See Memorandum Denying Defendants' Motion for Summary Judgment on Plaintiff's Design Defect Claim, Doc. No. 183 at 38-44 (Nov. 13, 2015); In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation, 2:13-md-02436, No. 2:12-cv-07263, 2015 WL 7075949, at *20-23 (E.D. Pa. Nov. 13, 2015); Memorandum Denying Defendants' Motion for Summary Judgment on Plaintiff's Failure-to-Warn Claim, Doc. No. 181 at 40-49 (Nov. 13, 2015);  In re: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation, 2:13-md-02436, No. 2:12-cv-07263, --- F.Supp.3d ----, 2015 WL 7075916, at *19-24 (E.D. Pa. Nov. 13, 2015).

[7] See Memorandum on Defendants' Motion for Summary Judgment on Plaintiff's Failure-to-Warn Claim, Doc. No. 181 at 48-49 n. 170 (Nov. 13, 2015); );  In re: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation, 2:13-md-02436, No. 2:12-cv-07263, --- F.Supp.3d ----, 2015 WL 7075916, at *23 n 170 (E.D. Pa. Nov. 13, 2015).

exclude this information, claiming its inclusion is either irrelevant or detrimental to the defendants' business interests in keeping this information proprietary.[8]

As I explained in my decision denying the defendants' motion for summary judgment on the design defect claim, Project PAPA cannot offer evidence of an alternative design because it did not produce a design alternative by the time Ms. Hayes had died.[9] Evidence of the existence of Project PAPA, however, can be offered to show knowledge of a defect and/or defendants' state of mind. In addition, the expenditures on this research (i.e., how the defendants increased spending on Project PAPA after the FDA Committee recommended making Extra Strength Tylenol prescription) are relevant to state of mind and the plaintiff's punitive damages claim.

The plaintiff concedes that she only plans to use the Project PAPA evidence for knowledge or notice. However, she disagrees to what extent the defense evidence on this is issue is highly confidential and should be sealed. For documents to be sealed there must be "good cause." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994). The test to determine whether "good cause" exists balances these factors:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

---

[8] See Doc. No. 203.

[9] See Memorandum Denying Defendants' Motion for Summary Judgment, Doc. No. 183, at 30-31 n. 133; In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation, 2:13-md-02436, No. 2:12-cv-07263, 2015 WL 7075949, at *15 n. 133 (E.D. Pa. Nov. 13, 2015).

4)  whether confidentiality is being sought over information important to the public health and safety;

5)  whether the sharing of information among litigations will promote fairness and efficiency;

6)  whether a party benefiting from the order of confidentiality is a public entity or official; and

7)  whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir.1995)(citing Pansy, 23 F.3d at 787-91).

Without seeing the contents of specific exhibits, I am unable to weigh the relevant factors. The public's health and safety will likely outweigh any privacy interests the defendants might have in information about Project PAPA's existence and purpose. If specific exhibits contain proprietary information or trade secrets, the factors may weigh in favor of sealing the presentation of this information at trial.[10] I will need to see the specific exhibits and/or subject of the proposed testimony in order to determine whether sealing is necessary.[11]

Specific scientific information about the drugs or chemical compounds being developed by Project PAPA (i.e., formulas, etc.) will likely be irrelevant because it can't show an alternative feasible design for the design defect claim. It also could be prejudicial to the defendants, because it contains trade secrets and proprietary

---

[10] This assumes that the information has not already been made public through some regulatory procedure through the FDA, Patent Office, or the like.

[11] The defendants' request for advanced notice of the plaintiff's use of highly confidential information is denied. If the sealing procedures put into place do not adequately protect the defendants' proprietary information, the defendants can raise this issue again with the court.

information, without having much probative value. Such information will likely be

excluded under Rule 401 and/or 403. I will need to see the actual exhibits being used or

proposed testimony before determining whether those contain such information.

The defendants also argue that this information should be excluded under Rule

407 as a subsequent remedial measure. This argument is not persuasive. Project PAPA

began before the decedent's death; it would not be "subsequent."[12] Nor would it be

remedial; no new alternative design has been produced from the project. I also see

nothing inherently confusing or prejudicial about the information to warrant outright

exclusion under Rule 403.

I will **DENY without prejudice** Plaintiff's **MIL I** and **DENY without prejudice**

Defendants' MIL on this same issue. I will also defer ruling on sealing or excluding

specific exhibits until the parties have submitted their exhibit lists and deposition

designations. I see nothing particularly burdensome about sealing certain parts of the

proceedings, if necessary. However, the parties are expected to meet and confer prior to

submitting their exhibit lists in order to keep disputes about confidentiality and sealing of

court proceedings to a minimum.

### J.  Plaintiff's Motion In Limine to Exclude References of Defendants' Charitable Contributions and Corporate Character (MIL J)

The plaintiff moves to exclude evidence, references, inferences, testimony,

documents, or arguments relating to the defendants' charitable contributions or corporate

character. She argues that this evidence is either irrelevant and/or is precluded by Rule

---

[12] See, e.g., Diehl v. Blaw-Knox, 360 F.3d 426, 433-434 n.5 (3rd Cir. 2004).

403. The plaintiff also argues that evidence that the defendants are "good companies" would be improper character evidence under Rule 404. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1).

The defendants argue that evidence encompassed in this motion is important to their defense. For example, the defendants plan to present evidence about research and development, product formulation, marketing efforts, product monitoring, and regulatory compliance. This evidence, they argue, is not character evidence. They claim that from this information a jury could infer that their products improve the lives of consumers. Explaining how their businesses operate, they claim, is not character evidence.

I agree that the defendants should be allowed to offer evidence on how they operate. However, the evidence the plaintiff is seeking to exclude—that of how the defendants are "good corporate citizens" by providing scholarships or making charitable contributions—would not be relevant to this case unless the plaintiff offers evidence to the contrary.

For these reasons, I will **GRANT** the motion **in part** and **DENY** it **in part without prejudice**. Evidence of the defendants' "good corporate character" is not admissible in the defendants' case-in-chief under Rule 404(a). Evidence of the defendants' charitable work would have no probative value.

The defendants may present evidence about their operations to explain to the jury what steps were taken to meet their statutory and common law duties. See In re Wright Medical Technology Inc., MDL Docket No. 2329, 2015 WL 6690046, at *3 (N.D. Ga.

Oct. 30, 2015)("Although good works, charity, community involvement, and other good deed evidence is not evidence that is generally admissible at trial, (see Fed.R.Evid., 404(a), 401, 402), it is conceivable, if not likely, that Defendants' mission statement and the manner in which it guided them in the manufacture of hip implant devices is probative of Defendants' intent for the purpose of the jury's consideration of a punitive damages award.").

**K. Plaintiff's Motion in Limine to Exclude Any Evidence, Argument, or Inference Pertaining to Accidental Death Insurance Claim (MIL K)**

The plaintiff moves to exclude evidence related to an accidental death insurance claim filed by the decedent's family after her death.  Specifically, the plaintiff seeks to exclude:

> 1) A letter from an attorney representing Rebecca Hayes, the decedent's sister, to Monumental Life Insurance Company advocating Denice Hayes' death was "accidental" as defined under the accidental death insurance policy (Doc. No. 59, Ex. A);

> 2) An insurance claim form purportedly signed by Rebecca Hayes (Doc. No. 59, Ex. B);

> 3) A medical questionnaire prepared by the attorney, and completed by one of Denice Hayes' treating physicians, indicating her death was "accidental" (Doc. No. 59, Ex. C).

Decedent Denice Hayes had an accidental death policy that was liable to pay benefits for her death if "caused by an accident." The insurance company's records show that Plaintiff Rana Terry called the insurance company on August 31, 2010 and told the insurance representative that Denice "died 8/31/2010 from a Tylenol overdose." Use Doc. No. 122, Ex. A at MLIC_INS00239 (Monumental Call Log for Denice Hayes File). The

company then sent Denice's family a claim form which Rebecca Hayes, Denice's other sister, completed. See Doc. No. 122, Ex. A. Rebecca Hayes was the beneficiary on the policy. See Doc. No. 122, Ex. A. Rana Terry served as a witness when Rebecca completed and signed this claim form. See Doc. No. 122, Ex. A at MLIC_INS00235.

The insurance company initially denied the claim because the physician completing the death certificate listed her death as being the result of "natural cause" instead of "accident." See Doc. No. 59, Ex. D. An attorney representing Rebecca disputed the denial and provided additional documentation to show that the death was indeed "accidental." To that end, documentation pertaining to the claim, made by Rebecca and her attorney, indicated that Denice "ingest[ed] too many Tylenol over the course of several weeks" and that she "accidentally took too many Tylenol over the course of several weeks." See Doc. No. 59, Ex. A, B; Doc. No. 122, Ex. A. The insurance company paid the claim after receiving additional information about Denice's death.

### i. Relevance

The plaintiff argues that this information is not relevant because the jury will not have to determine if Denice Hayes's death was accidental. The parties agree that the death was, in fact, accidental and not intentional. The key question the jury will have to answer regarding causation is whether the decedent's death was caused by acetaminophen.[13] The accidental death insurance claim, the plaintiff argues, offers no evidence that would help the jury answer this question. Even if it were relevant, the

---

[13] Ms. Hayes' treating physicians, as well as the plaintiff's experts, contend acetaminophen toxicity caused her death, while defendants' experts contend her death resulted from sepsis, or some other cause.

plaintiff argues that its minimal probative value is substantially outweighed by the risk of prejudice to the plaintiff or confusion of the jury under Rule 403. To this end, I would need to see how the statements would be used in context to make such a determination.

### ii.     Hearsay

The plaintiff also argues that the statements should be excluded as hearsay. They would be out-of-court statements offered to prove the truth of the matter (i.e., causation of the decedent's death). See FED. R. EVID. 801(c). The defendants rebut this argument by offering several hearsay exceptions and exemptions.

First, the defendants claims the statements by Rana Terry, Rebecca Hayes, and the attorney representing the estate in the insurance dispute should be considered party admissions. A statement offered against an opposing party, which was made by the party or her agent, would not be considered hearsay. FED. R. EVID. 801 (d)(2)(A). The defendants argue that statements made by Rana Terry, as a party to this case, would not be hearsay because she is a party opponent. They also argue that Rebecca would be a party opponent because she is a "party in interest" under Alabama law and, therefore, a party under Rule 801(d)(2)(A). From there, they argue that the statements of Rebecca's attorney, as her agent, would also be admissible. This is a stretch. I do not read "party opponent" as the defendants do. Rebecca's and her attorney's statements would not be admissible under Rule 801(d)(2)(A).[14] However, Rana Terry's statement would not, as a party admission, be hearsay.[15]

---

[14] The defendants also argue that Rebecca's statements and her attorney's statements could be attributed to Rana Terry because she adopted them.  See FED. R. EVID. 801(d)(2)(B). They point to her witnessing the signature of medical authorization forms and her being carbon-copied on the attorney's letters as proof of her adoption of these

Second, the defendants argue that evidence of the accidental insurance claim would fall within the business records exception to hearsay found in Rule 803(6). The business records exception to hearsay allows records of "an act, event, condition, opinion, or diagnosis" to be admitted if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6). From what the defendants have provided, the insurance claim file documents meet the criteria for the business records exception and would likely not be considered hearsay.

### iii.    Collateral Source Rule

This does not end the analysis. The plaintiff argues that the statements are not admissible under Alabama's collateral source rule. Federal courts sitting in diversity generally apply state law in making evidentiary decisions about the admissibility of

---

statements. Again, this is a stretch. To say that a person adopts, as their own, statements of another person which they witness or receive a carbon-copy is not enough.

[15] Business records from the life insurance company indicate the Rana Terry called on August 31, 2010 to report that her sister Denice had died of a "Tylenol Overdose" and to request that claim forms be sent. See Doc. No. 122-1 at 221.

collateral sources.[16] Alabama's collateral source doctrine generally excludes evidence

that the plaintiff received an insurance payout in a related civil action. See, e.g., Morales

v. Barnett, 978 So.2d 722, 727 (Ala. Civ. App. 2006), aff'd sub nom, Ex parte Barnett,

978 So.2d 729 (Ala. 2007).[17] The defendants claim that the collateral source rule does not

apply here. They argue the collateral source rule only applies to "civil actions where

damages for any medical or hospital expenses are claimed and are legally recoverable for

personal injury or death" based on language found in Ala. Code § 12-21-45(a) and § 6-5-

522. The defendants' legal interpretation of the collateral source is not accurate.

Alabama's collateral source rule was formally adopted by its Supreme Court in

Gribble v. Cox, 349 So.2d 1141, 1143 (Ala. 1977).[18] It states: "[A]s a general rule, the

fact that the plaintiff received gratuitous medical care, continued salary or wage

payments, proceeds from insurance policies, or welfare and pension benefits, will not be

taken into account in computing damages." Id. "[T]he collateral-source rule has been

abrogated in limited instances by [the Alabama] legislature [related to medical

---

[16] See, e.g., Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998)("[I]t is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as the parol evidence rule, the collateral source rule, or the statute of frauds…"); In re Air Crash Disaster Near Cerritos, Cal., On Aug. 31, 1986, 982 F.2d 1271, 1277 (9th Cir. 1992)("A federal court applies state law in matters involving the collateral source rule."); In re Air Crash Disaster Near Chicago, Ill., On May 25, 1979, 803 F.2d 304, 308 (7th Cir. 1986)("[A] federal court sitting in diversity must apply the collateral source rule of the state whose law governs the case..." (citation omitted)); Matlin v. Langkow, Nos. 02–1007, 02–1138, 65 Fed. Appx. 373 (3rd Cir. Jan. 22, 2003) (applying state collateral source law in diversity case).

[17] There are several exceptions to this rule but none apply in this case. See Morales v. Bennett, 978 So.2d 722, 727 (Ala. Civ. App. 2006).

[18] See Barnett, 978 So.2d at 726-27; Ensor v. Wilson By and Through Wilson, 519 So.2d 1244, 1266 (Ala. 1987)("Our case of Gribble v. Cox, 349 So.2d 1141, 1142 (Ala. 1977), quoted with approval the general rule found in 22 Am.Jur.2d Damages § 206: " ' * * * [A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages. * * * ')."). See also Marsh v. Green, 782 So.2d 223, 230-31 (Ala. 2000)(explaining how collateral source rule was first noticed by Alabama Supreme Court in 1910).

expenses].” Barnett, 978 So.2d at 726-27 (citing Ala. Code § 12-21-45 (1975))(making evidence that a plaintiff's medical or hospital expenses have been paid or will be reimbursed admissible in civil tort cases). See also Ala. Code § 6-5-522 (1975)(making evidence that a “plaintiff's medical or hospital expenses have been or will be paid or reimbursed (1) by medical or hospital insurance, or (2) pursuant to the medical and hospital payment provisions of law governing workmen's compensation” admissible in products-liability cases); Ala. Code § 6-5-545 (1975)(making evidence that a plaintiff's medical or hospital expenses have been paid or will be reimbursed admissible in medical-malpractice cases). However, the rule as it relates to other insurance payments and collateral sources remains in effect. See Barnett, 978 So.2d at 727.

   This case involves death insurance payments, not medical or health insurance payments. From what has been provided, the collateral source rule would be applicable. The defendants further claim it is not applicable because this case involves only punitive damages and not compensatory damages. They cite no authority to support this argument. I cannot find any that speaks directly to this issue.

   The defendants make a valid point. Evidence of death insurance payments would not necessarily prejudice computation of damages in this case because no compensatory damages are permitted under Alabama's wrongful death statute. See Ala.Code § 6-5-410 (1975); Alabama Power Co. v. Turner, 575 So.2d 551, 556 (Ala. 1991), cert. denied, 500 U.S. 953 (1991). However, the Alabama's wrongful death statute focuses on punitive damages and the conduct of the defendant; the conduct of the plaintiff becomes less relevant. The admission of death insurance payments could prejudice, mislead, or confuse

a jury. The relevance of the death insurance claim documents would likely be substantially outweighed by the risk of prejudice or confusion under Rule 403—especially because the information the defendants seek to admit (i.e., statements by the decedent's sisters that she took too much Tylenol) can be obtained from other, less prejudicial sources.

In this way, the argument to exclude the death insurance documents aligns with the underlying policy of the collateral source rule. The collateral source rule is similar to that of the rule excluding evidence of a defendant's liability insurance. See American Legion Post No. 57 v. Leahey, 681 So.2d 1337, 1339 (Ala.1996), *overruled on other grounds by*, Marsh v. Green, 782 So.2d 223 (Ala. 2000).  "The reason underlying the exclusion of collateral source payments is that, weighing the prejudice to plaintiff from admitting that evidence against its value and weight to prove motive or malingering, its exclusion is warranted by the availability of better, less prejudicial evidence on this issue." Gribble v. Cox, 349 So.2d 1141, 1143 (Ala. 1977).

Allowing the defendants to offer evidence that the decedent's family received accidental death insurance payments could run afoul of the principles underlying both the Alabama wrongful death statute and the collateral source rule. For this reason, I will not permit those documents to be presented in the defendants' case-in-chief.

For these reasons, I will **GRANT** the motion based on the collateral source rule, Rule 401, and/or Rule 403. I will reconsider this ruling if the evidence is presented for impeachment purposes.

**L. Plaintiff's Motion in Limine to Exclude Any Evidence, Argument, or Inference Pertaining to Denice Hayes' Social Security Disability Claim (MIL L)**

The plaintiff moves to exclude evidence and/or make arguments pertaining to a Social Security disability insurance (SSDI) claim made by Decedent Denice Hayes on September 13, 2006. Specifically, the plaintiff argues that medical documents in the disability claim file involve medical conditions that were resolved before her death. For this reason, the plaintiff claims the SSDI documents are not relevant or their marginal relevance is substantially outweighed by the risk of prejudice or confusion of the jury. See FED. R. EVID. 401, 403.

In 2006, four years before her death, Denice Hayes applied for and was granted SSDI benefits. Her Social Security file contains a large volume of documents relating to her medical conditions at that time, including obesity, hypertension, diabetes, and sleep apnea. In 2009, Ms. Hayes underwent gastric bypass surgery and, in a relatively short time, lost over 100 pounds. According to medical records after the surgery, this dramatic weight loss resolved her hypertension, diabetes, and sleep apnea.

The defendants argue that Denice's debilitated state of health was the real cause of her death because it made her susceptible to infection and to overdosing on Tylenol. This argument places the cart before the horse. The defendants "take plaintiffs as they are" under the tort concept of the "eggshell plaintiff rule." Under Alabama products liability law, they may argue traditional tort defenses, such as assumption of the risk and contributory negligence. But in this case, I see little relevance in Denice's medical history years before her death, especially given the defendants' theory of the case. None of the

defendants' experts have opined that the conditions rendering Denice disabled ultimately caused her death. Instead, they claim that sepsis, which developed several weeks before her death, was the cause.[19]

The plaintiff also argues that the SSDI claim documents should be excluded under the collateral source rule. Federal courts sitting in diversity generally apply state law in making evidentiary decisions about the admissibility of collateral sources.[20] Alabama's collateral source doctrine generally excludes evidence that the plaintiff received an insurance payout in a related civil action. See, e.g., Morales v. Barnett, 978 So.2d 722, 727 (Ala. Civ. App. 2006), aff'd sub nom., Ex parte Barnett, 978 So.2d 729 (Ala. 2007).[21]

---

[19] Sepsis is a potentially life-threatening complication from infection. See http://www.mayoclinic.org/diseases-conditions/sepsis/basics/definition/con-20031900. In other words, it is not a long-term condition that would have been present when Denice applied for SSDI. The defendants themselves indicate the sepsis began after Denice had back surgery in early August.

[20] See, e.g., Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998)("[I]t is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as the parol evidence rule, the collateral source rule, or the statute of frauds…"); In re Air Crash Disaster Near Cerritos, Cal., On Aug. 31, 1986, 982 F.2d 1271, 1277 (9th Cir. 1992)("A federal court applies state law in matters involving the collateral source rule."); In re Air Crash Disaster Near Chicago, Ill., On May 25, 1979, 803 F.2d 304, 308 (7th Cir. 1986)("[A] federal court sitting in diversity must apply the collateral source rule of the state whose law governs the case..." (citation omitted)); Matlin v. Langkow, Nos. 02–1007, 02–1138, 65 Fed. Appx. 373 (3rd Cir. Jan. 22, 2003) (applying state collateral source law in diversity case).

[21] There are several exceptions to this rule but none apply in this case. See Morales v. Bennett, 978 So.2d 722, 727 (Ala. Civ. App. 2006). The defendants' arguments regarding the applicability of the collateral source rule are not on point, as I explained above regarding MIL K. See Barnett, 978 So.2d at 726-27; Gribble v. Cox, 349 So.2d 1141, 1143 (Ala. 1977); Ensor v. Wilson By and Through Wilson, 519 So.2d 1244, 1266 (Ala. 1987)("Our case of Gribble v. Cox, 349 So.2d 1141, 1142 (Ala. 1977), quoted with approval the general rule found in 22 Am.Jur.2d Damages § 206: " ' * * * [A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages. * * * ' "). See also Marsh v. Green, 782 So.2d 223, 230-31 (Ala. 2000)(explaining how collateral source rule was first noticed by Alabama Supreme Court in 1910). "[A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages." Gribble, 349 So.2d at 114. Social Security payments fall squarely within the collateral source rule as insurance and/or welfare benefits. See Morse v. Jimenez, No. Civ.A.01–1787, 2004 WL 1211958, at *1 n. 1 (E.D. Pa. Jun. 1, 2004)("We also note that evidence of Mr. Morse's Social Security disability benefits is also inadmissible pursuant to the collateral source rule, which prohibits evidence of collateral source benefits to offset damages." (citations omitted)).

For these reasons, I will **GRANT** the motion **in part** and **DENY** it **in part without prejudice**. The defendants are precluded from offering evidence that the decedent applied for and received Social Security benefits based on the collateral source rule, Rule 401, and/or Rule 403.[22] I will decline to rule on the admissibility of information contained in medical records in the SSDI file until trial when I am better able to determine the context of their usage.[23]

### M. Plaintiff's Motion in Limine to Exclude Any Evidence, Argument, or Inference Relating to The Risk of Adverse Events From Medications Other Than Acetaminophen (MIL M)

The plaintiff moves to exclude evidence, argument, or inference about the adverse effects of medications other than acetaminophen. Specifically, the plaintiff seeks to

---

[22]Admission of evidence that Denice was on SSDI benefits would be unduly prejudicial, confusing, or misleading to the jury. Alabama does not permit the admission of evidence as to the plaintiff's poverty because it could be highly prejudicial. See Southern Life Health Ins. Co. v. Whitman, 358 So.2d 1025, 1026-1027 (Ala. 1978)("Not only have our cases held that the wealth of a defendant is not admissible, but also have held inadmissible the poverty of a plaintiff."); Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 836 (Ala. 1989)("Nevertheless, policy considerations are paramount in our continued adherence to that rule of evidence first announced in Ware v. Cartledge, 24 Ala. 622, 60 Am.Dec. 489 (1854). For instance, a plaintiff could show himself to be poor and the defendant to be of great wealth; the sympathies of the jury would possibly be aroused, and the punitive award would reflect the economic conditions of the parties and not the liability. Conversely, a defendant could show himself to be poor and the plaintiff to be of great wealth, and concessions would be made to the 'insolvent bully ... [and] damages would be graduated to his present ability to pay them, and consequently would be merely nominal.' Ware v. Cartledge, 24 Ala. at 626. Accordingly, we reaffirm our substantive rule of law that liability for damages cannot be determined by the economic condition of either party, and, therefore, we hold that 'fundamental fairness' in the context of punitive damages does not require consideration of a wealth-based standard for their award prior to determining liability.'").

The focus of this wrongful death action is on the defendants' conduct, not the plaintiff's. See, e.g., Atkins v. Lee, 603 So. 2d 937, 943 (Ala. 1992)(quoting ALA. PATTERN JURY INST. 11.28). Under Rule 403 and the collateral source rule, discussion of Denice's receipt of SSDI benefits does not pass muster.

[23] The plaintiff also argues that the files contain inadmissible hearsay. See FED. R. EVID. 801(c), 802. The defendants counter that they fall within several exceptions to the hearsay rule, notably Rule 803(3)(hearsay exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)") or Rule 803(4)(A)-(B)(hearsay exceptions for statement that "is made for — and is reasonably pertinent to — medical diagnosis or treatment;" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause."). In order to address these arguments, I would need to see the evidence in context. I will defer making a ruling as to these arguments until trial.

exclude argument that reduced access to acetaminophen would force consumers to switch to other medications which would cause other adverse events. The plaintiff argues that this information is irrelevant. The defendants counter that this information would be relevant to their defense in showing that Extra Strength Tylenol was the safest option for the decedent to take. I do not see the relevance of adverse events for other analgesics. This case is about whether acetaminophen at the recommended dose was safe or whether a lower dose was safer, not whether acetaminophen was safer than another analgesic.

For this reason, I will **GRANT** this motion.

## N. Plaintiff's Motion in Limine Regarding Statements about Plaintiff's Counsel (MIL N)

The plaintiff moves to exclude evidence related to how the plaintiff chose her counsel, how and why the plaintiff contacted any attorney, reference to prior cases by the plaintiff's counsel, and reference to plaintiff's counsel contingent fee arrangement with plaintiff. The plaintiff argues these are irrelevant or unduly prejudicial. I agree.

This information is not relevant and/or the risk of unfair prejudice substantially outweighs any minimal probative value it may have. See FED. R. EVID. 401, 403. See also In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Products Liab. Litig., 73:09-CV-10012-DRH, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011)(granting similar motion based on relevance)("This is no more relevant than how Bayer came to hire each of its lawyers. Whether a commercial played a role in it is likewise irrelevant."). The defendants argue that they should at least be permitted to introduce this evidence for impeachment purposes (i.e., credibility or memory). If the plaintiff "opens the door" to

allow such impeachment material, it would be only fair for the defendants to use this information. See Zuniga v. Johnson & Johnson, No. 001322 (Phila. Ct. Cmn. Pl. July Term, 2010)(Doc. No. 82, Ex. C)(granting similar motion for most purposes but denying for impeachment).

For this reason, I will **GRANT** the motion. I will reconsider this ruling if the evidence is presented for impeachment purposes.

### O. Plaintiff's Motion in Limine to Preclude References by Defense Counsel or Witnesses that They Take Tylenol Products or Give Tylenol Products to their Family Members or that they Have Suffered Personal Tragedies (MIL O)

The plaintiff moves to exclude evidence, testimony, comment, inference, or document by defense counsel or witnesses about their personal use of Tylenol and/or the personal use by their family members. They also seek to preclude evidence or argument that defense counsel or defense witnesses suffered some "personal tragedy." This motion serves as a supplement to MIL D.

Testimony by employees of the defendants about whether they personally take Tylenol is of little relevance to this case. However, the potential prejudice that such testimony may cause substantially outweighs any probative value it may have. See In re Yasmin, 3:09-cv-10012-DRH-PMF (3:09-md-2100-DRH-MDL 2100), Doc. No. 262 at 61-62 (Phila. Ct. Cmn. Pleas., Mass Torts Div. Dec. 22, 2011)(Doc. No. 55, Ex. 2, 3)(excluding testimony by Bayer employees that they took Yaz because testimony was irrelevant and/or any probative value would be substantially outweighed by the prejudice of hearing employees who were loyal to the company offer benefits, while plaintiff could not rebut with testimony of consumers who did not take product because of risks);

37

<u>McCarrell v. Hoffman-LaRoche, Inc. and Roche Labs., Inc.</u>, ATL-L-1951-03-MT, (N.J. Law Div. Apr. 17, 2007)(Higbee, J.)(excluding evidence that witnesses, experts, or plaintiff's family/friends personally used Accutane because would be "more prejudicial than probative"). Personal use by some defense witnesses may not be appropriate for these reasons.

Evidence or argument that defense counsel or counsel's family members took Tylenol would not be relevant. The same would be true if a similar argument were put forth by plaintiff's counsel. Such arguments will be excluded.

Evidence about "personal tragedy" by defense counsel or witnesses is vague. It is unclear to me what this would include. I will deny the motion in this regard.

For these reasons, I will **GRANT** the plaintiff's motion **in part** and **DENY it in part**. Counsel for both parties is precluded from arguing or offering evidence that they or their families personally take Tylenol products.

## II.    Conclusion

For the foregoing reasons, I make the following rulings:

- MIL A is Denied without prejudice;

- MIL B is Granted and applies to both parties;

- MIL C is Denied without prejudice;

- MIL D is Granted in part and Denied in part, as explained above;

- MIL E is deferred until deposition designations are before the court;

- MIL F is Denied in part without prejudice and Granted in part, as explained above;

- MIL G is deferred until deposition designations are before the court;

- MIL H is Granted, as explained above;

- MIL I is Denied without prejudice and Defendants' MIL on the same issue is Denied without prejudice, as explained above;

- MIL J is Granted in part and Denied in part without prejudice, as explained above;

- MIL K is Granted without prejudice, as explained above;

- MIL L is Granted in part and Denied in part without prejudice, as explained above;

- MIL M is Granted;

- MIL N is Granted without prejudice; and

- MIL O is Granted in part and Denied in part, as explained above.

An appropriate Order follows.